**Verdis Dewayne HUBBARD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–87–238 CR.**

Court of Appeals of Texas,
Beaumont.

June 29, 1988.

Discretionary Review Granted Oct. 5, 1988.

George E. Renneberg, Law Offices of William E. Hall, Jr., Conroe, for appellant.

Thomas D. Glenn, Asst. Dist. Atty., Conroe, for appellee.

OPINION

BURGESS, Justice.

This is an appeal from the denial of a writ of habeas corpus. Appellant was indicted for burglary of a habitation alleged to have occurred on April 2, 1987. In the same instrument, appellant was also charged with burglary of a motor vehicle on or about April 6, 1987. Included in the indictment was an enhancement count. The case was called for trial on October 19, 1987. A jury was selected, sworned and placed in the jury box. Prior to any further proceedings, appellant's counsel made an oral motion to compel the state to elect between the counts in the indictment and in support of the motion referred the trial court to *Ex parte Siller,* 686 S.W.2d 617 (Tex.Crim.App.1985) and *Drake v. State,* 686 S.W.2d 935 (Tex.Crim.App.1985). The following, in pertinent part, occurred:

> [DEFENSE COUNSEL]: The defense moves the Court to compel the State to elect between the counts on the incident indictment and to tell the Court which of those counts the State elects to move forward on under the teaching of *ex parte Siller,* 686 SW 2nd [sic] 617,....
>
> ....
>
> THE COURT: Your response, Counsel?
>
> [PROSECUTOR]: Your Honor, just briefly in response, both of these offenses, burglary of a habitation and burglary of a motor vehicle are included in Chapter 30 of Title 7 which are offenses against property.
>
> ....
>
> THE COURT: Were they allegedly committed on the same day?
>
> [PROSECUTOR]: No, sir. The first offense was four days before the second one.....
>
> ....
>
> [PROSECUTOR]: In response, Your Honor, first of all, the State would urge to the Court that the motion filed by the defendant is untimely in that the jury has already been informed in the voir dire process of the existence of two offenses....

To force the State to elect at this time to proceed only on one offense is going

to cause an extreme amount of confusion and disadvantage to the State because we have already informed the jury of the existence of the two offenses. That's the first point.

Second point is that these are specifically Title 7 offenses in Section 30.02 of the Penal Code. It talks about a defendant may be prosecuted in a similar criminal action for all offenses arising out of the single criminal episode.

Criminal episode is defined as repeated commission of the same or similar offense. Burglary of a habitation and burglary of a motor vehicle are both in Title 7. In fact, burglary of a habitation is 30.02; burglary of a vehicle is 30.04.

The other point I would like to make is that the case in Siller that counsel has referred the Court to was an aggravated rape and indecency with a child. They were specifically not Title 7 offenses.... [T]here was no specific reference to a joiner [sic] of those kinds of offenses in the Penal Code, whereas we are proceeding here on property crimes that are specifically covered.

Also, if there is to be an election, the only appropriate election or instruction would be in the jury charge at the conclusion of the evidence where the jury would be charged either onto a finding of guilty or not guilty on the burglary of a habitation or the burglary of a motor vehicle. That would be the time to make such an instruction if it was proper in the first place. Counsel's attempts here to limit the prosecution to only discussing one offense is without merit in that they're both connected as having occurred during the same criminal episode even though they are four days apart.

THE COURT: Counsel, ... I went up there and read both cases, Siller and Drake, okay? And Fortune is pending in the Court now. So if this causes you to, you think, any undue, the State any undue justice or hamstrings you, well, I will dismiss this jury and we will come back another day.

[PROSECUTOR]: If I understand the Court, let me—

THE COURT: In other words, I think you need to—I read Siller and Drake and I think that you know that that is the law. I don't see the distinction between Title 7 and the sexual offenses that were alleged in Siller.

[PROSECUTOR]: Okay. Would it be proper then, Judge, to proceed with the evidence and then at the time of the jury charge, to charge the jury only on one offense?

THE COURT: I don't think so. I don't think that would be proper.

... I think the law was pretty plain in Siller. You have ... one indictment and you have two different offenses and then you have got an enhancement paragraph. And so my ruling would be that you need to either go with the burglary of a habitation and then enhancement and/or the, or the burglary of a vehicle and then enhancement. And if you feel like because you have said something to this jury panel, you know, I will let them go.

. . . .

... I think you do have to elect and if you feel like that because you have said something to the jury and that you think that this jury panel and you think this motion is untimely, well, you know, he has not been indicted. I mean, no indictment has been, you know, you haven't read the indictment yet. He hasn't entered his plea yet, so there is no jeopardy that attaches.

So I think now is the time to quit if ... you feel like you're unduly burdened with—

. . . .

And I have a hard time with that being the same criminal episode or same transaction.

[PROSECUTOR]: In that case then, Judge, I would request that this jury be dismissed and we come back at a later date because I think they have, I have talked to them. My credibility is disturbed with them, I think, if we proceed on something less than what I have talked about.

. . . .

[DEFENSE COUNSEL]: I object to any mistrial, Your Honor. We have got a jury and we are ready to proceed.

THE COURT: Well, your first motion is granted and now the State's motion is granted and I will dismiss the jury and we will proceed again on another day.

■ Improper termination of an earlier trial raises a double jeopardy bar to subsequent prosecutions. *See Torres v. State,* 614 S.W.2d 436 (Tex.Crim.App. [Panel Op.] 1981). The claim may be raised either by special pleas or, as in this case, by habeas corpus. *Ex parte Robinson,* 641 S.W.2d 552, 553–54 (Tex.Crim.App. [Panel Op.] 1982). In this case, the trial court was mistaken in thinking that jeopardy did not attach until the indictment was read and the defendant had entered his plea. Jeopardy attaches when the jury is empaneled and sworn to try the case. *Torres* 614 S.W.2d at 441. A termination of a criminal trial after jeopardy attaches and without defendant's request or consent can only be proper when required by "manifest necessity." *Chvojka v. State,* 582 S.W.2d 828, 830 (Tex.Crim.App. [Panel Op.] 1979). The record reflects no finding of manifest necessity by the trial court, nor do we find any.

■ The state argues appellant's motion to elect was untimely and improper and thus is the same as having "an indictment dismissed at the defendant's request in circumstances functionally equivalent to a mistrial." This is an exception recognized by the U.S. Supreme Court in *Sanabria v. United States,* 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978). We disagree. In the first place, the procedure utilized by appellant was correct. *See Fortune v. State,* 745 S.W.2d 364 (Tex.Crim.App.1988). Second, the mistrial, while admittedly offered by the court, was nevertheless granted on the motion of the state. Last, appellant objected to the granting of the mistrial.

As stated in *Torres,* 614 S.W.2d at 441, "Once jeopardy attaches ... the defendant possesses a valued right to have his guilt or innocence determined before the first trier of fact." The trial court erred in overruling the writ of habeas corpus. The writ is granted and the state is barred from prosecuting appellant on either of the offenses contained in the indictment.[1]

WRIT GRANTED.

BROOKSHIRE, Justice, dissenting.

This dissent is respectfully filed.

The Relator was indicted for the burglary of a habitation with the intent to commit and actually committing theft, the offense allegedly transpired on or about April 2, 1987. Next, the Grand Jury alleged in the same indictment that on or about April 6, 1987, that the Relator, the accused, broke into and entered a vehicle with the intent to commit theft.

The indictment included one enhancement paragraph setting out that in September of 1986 in the District Court of Montgomery County Verdis Dwayne Hubbard was convicted of a felony, to-wit: burglary of habitation, and that the said conviction became final prior to the commission of the two indicted offenses.

After the jury was seated, the Relator made a motion to compel the State to elect between the counts and to announce to the court which of the counts the State elected to move forward on. The motion of the accused was that an indictment may only return counts from one transaction and the accused took the position that there were two different transactions indicted in the same indictment.

There was a brief discussion concerning the fact that at the voir dire stage the jury had been advised of the two counts and after a colloquy among the attorneys and the court, the court announced something to the effect that if the granting of the

---

1. Ordinarily, the cause would be ordered dismissed and the appellant discharged. In this case, however, the state advised this court that the original indictment had been dismissed and that appellant had been reindicted in two separate indictments. Technically, appellant should have filed an amended application for writ of habeas corpus attacking the two new indictments. The state, in its brief, urged this court, in the interest of judicial economy, to render this opinion addressing the issue.

motion of the Appellant–Relator caused the State undue hardship or hamstrings it in the proof, then the court would dismiss the jury. This was a mistaken idea or concept; but we all make mistakes. Further, the State's attorney thought that his credibility would be discredited before the jury if the State proceeded on something much less than that which was discussed during the voir dire.

Even if there was a mistaken idea or concept entertained by an official of the State, I do not see how the Relator, Hubbard, was exposed to jeopardy—certainly not double jeopardy—as to the count involving the breaking into and the entering of a vehicle without the effective consent of its owner, being Ronnie Dawson. In *Fortune v. State*, 745 S.W.2d 364 (Tex. Crim.App.1988), the substance of the court's holding was that the matter of a misjoinder could be raised at any time, even for the first time in the Court of Criminal Appeals, and that the second count in an indictment where a misjoinder was present was void. Since the second count was void, it is difficult to see how jeopardy attached thereto.

The sole and only point of error of Appellant is that the trial court erred in failing to grant the Appellant's application for writ of habeus corpus. In his brief, the Appellant/Relator asserted that jeopardy attached when the twelve jurors were selected and sworn. He cites one case, *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). The facts and the procedural posture of *Crist, supra*, were meaningfully different and easily distinguishable from the case at bar. In *Crist* the prosecution made the motion to dismiss the information. *Crist* is not controlling.

*United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978), is a threshhold leading authority. In the case at bar, the Appellant–Relator deliberately chose to seek the termination of a part of the proceedings against him based on the misjoinder. This basis was unrelated to any factual guilt or innocence of either one of the offenses of which Hubbard was accused. Hence, Hubbard suffers no injury cognizable under the double jeopardy clause *as to both counts*. Certainly in the case at bar, the Appellant–Relator, because of his own actions and motion has not been deprived of his right to have the first jury determine his guilt or innocence as to both the first *and* second count. *See United States v. Scott, id.; Fortune, supra*. In *Scott* the U.S. Supreme Court concluded that:

"We think the same reasoning applies *in* pari passu where the defendant, instead of obtaining a reversal of his conviction on appeal, obtains the termination of the proceeding against him in the trial court without any finding by a court or a jury as to his guilt or innocence. He has not been 'deprived' of his valued right to go to the first jury; *only the public has been deprived of its valued right to 'one complete opportunity to convict those who have violated its laws'* citing *Arizona v. Washington*, 434 U.S. at 509, 54 L.Ed.2d 717, 98 S.Ct. 824 [at 832]." (Emphasis added)

*Id.*, 437 U.S. at 100, 98 S.Ct. at 2198, 57 L.Ed.2d at 80.

Because a motion to compel an election was proffered and urged by the Appellant, whereby he deliberately chose to seek a termination of a part of the proceedings against him and because no evidence was presented to enable the trier of facts to make any factual determination in either of the counts, I can see no logical reason why double jeopardy would attach to each count; the second count has been declared void. Query: How has Hubbard been placed in jeopardy twice as to the second void count?

Under the reasoning and rationale of *Fortune v. State, supra*, the second count was void and; hence, jeopardy could not attach even if an official of the State labored under an inadvertent misconception. This misconception should not inure to the benefit of the accused on both and each of the counts of the indictment.

But under the ruling of the majority, Texas citizens have been deprived of their important, highly valued right to have at least one day in court to attempt to convict those who have violated the laws of Texas.

*See Arizona v. Washington, supra; State of Connecticut v. Evans,* 205 Conn. 528, 534 A.2d 1159 (1987).

Jeopardy and double jeopardy realistically attach when the accused is harrassed *by successive prosecutions for the same offense* or by the declaration of a mistrial so as to afford the prosecution a more favorable opportunity to obtain a conviction. *Downum v. United States,* 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963). The double jeopardy clause of the Fifth Amendment to the United States Constitution states in its basic thrust—"... nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; ..."

Beginning with *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165, which was handed down in 1824, until the case of *Gori v. United States,* 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961), it has been settled law that there are occasions when even a second trial may be had, although the jury impaneled for the first trial was discharged without verdict and without the defendant's consent. The unquestioned example, of course, is a mistrial declared after it became obvious that the jury was absolutely unable to reach a verdict. There are times when the valued right of an accused to have his trial completed by a particular tribunal summoned to pass judgment may nevertheless be subordinated to the public interest. *Downum, supra.*

In *United States v. White,* 524 F.2d 1249 (5th Cir.1975) the court held that even if double jeopardy had attached, when the first jury was selected and sworn; nevertheless, the conclusion that jeopardy had attached *only began rather than concluded the inquiry as to whether a retrial is actually barred.* There has been a broad judicial concensus that virtually all double jeopardy cases turn on their own particular facts. Hence, these double jeopardy cases escape categorical classification. *See Gori v. United States, supra; United States v. Kin Ping Cheung,* 485 F.2d 689 (5th Cir. 1973). A jury may be discharged when required by either manifest necessity *or to*

*avoid defeating the ends of public justice;* and, in doing so, a retrial is not barred.

In *Chvojka v. State,* 582 S.W.2d 828 (Tex.Crim.App.1979), the court wrote:

"The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution protects a defendant in a criminal proceeding against multiple punishments or repeated prosecutions for the same offense. See *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976)."

Indeed, in *Chvojka* the court further reasoned in substance that whether there can be a second trial after a mistrial has been declared without the defendant's request or consent depends on whether there is a manifest necessity for the mistrial *or the ends of public justice would otherwise be defeated.* Clearly, this rule applies to the instant case.

Since by his own motion the accused set in motion a series of events that lead to the dismissal of the jury and since the second count of the indictment under *Fortune, supra,* was void, he has certainly not been placed in either single or double jeopardy as to the second count involving the breaking into of the vehicle. Hubbard, I say, can be tried on the second count.

The accused had no valued right to be tried by the first jury as to both and each of the counts because of his own motion to force the State to elect.

In *Wade v. Hunter,* 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949) the Court wrote:

"... a rigid formula is inconsistent with the guiding principles of the Perez decision [*United States v. Perez,* ([22] U.S.) 9 Wheat. 579, 6 L.Ed. 165 (1824)] to which we adhere. Those principles command courts in considering whether a trial should be terminated without judgment to take 'all circumstances into account' and thereby forbid the mechanical application of an abstract formula. The value of Perez principles thus lies in their capacity for informed application under widely different circumstances without injury to the defendants or *to the public interest.* (emphasis ours)"

One of the basic reasons for applying the double jeopardy doctrine is that the citizen would be put to the expense of two separate trials including two attorneys' fees. We notice in the record in this case that the defendant very shortly after indictment, upon his application, had a court-appointed attorney assigned to him whose fees will be paid by Montgomery County.

In *United States v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975), the Court held that the primary purpose of the double jeopardy clause was to prevent successive trials. Here the State has had no trial.

In *Sanabria v. United States*, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978), the Court held that the double jeopardy clause bars retrials for the "same offense." This accused has not been tried for either offense and for that reason he cannot be held to have been placed in double jeopardy in both and in each. Here, where the dismissal of the jury was not attributable to the prosecutorial or judicial overreaching, the accused is barred from relying upon a double jeopardy defense. *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *United States v. Dinitz*, 492 F.2d 53 (5th Cir.1974). *See United States v. White, supra.* Thus, the accused, I perceive, has never been subjected to single jeopardy as to the second count of the indictment. *See Fortune v. State, supra.*

Moreover, the ruling of the majority is overbroad and does not take into account the valued right of the law-abiding citizens of Texas through their duly elected officials to have *their full day in court to attempt, as they have a right to do, to convict those persons who have violated their laws.*

The accused, in practicality, terminated one-half of the proceeding against him under the indictment for which the first jury had been selected to try him.

The Appellant by his motion effectively sought to avoid trial (prior to its conclusion) as to one count in the indictment. Having originally made such a motion, the accused has removed any barrier to his re-indictment as to at least one count. This would be true even if the accused's motion was brought about by either a prosecutorial or a judicial error. *United States v. Scott, supra; United States v. Jorn, supra.*

Certainly such a motion as was urged by the Appellant–Relator is clearly a deliberate action on his part to forego his right to have either his innocence or his guilt and indeed, his punishment decided by the first jury acting as the first trier of the facts as to both crimes. Without question, here the defendant put into motion and by his eloquent urging exercised control over the course of the criminal proceedings.

The State urged that the proper time to make the election would be at the time of the court's charge to the jury. This position was correct at the time of the motion hearing in the district court.

From the prosecutor's statements, the two offenses were related. The stolen properties of the burglary of the habitation were recovered when the arrest was made involving the offense against the vehicle.

In *Sifford v. State*, 741 S.W.2d 440 (Tex. Crim.App.1987), the Court of Criminal Appeals set out the correct procedure, writing as follows:

"The defendant may, instead, forgo the motion to quash and file a motion requesting the State elect the count in the charging instrument upon which it will proceed. The trial court should grant the motion if the State has misjoined offenses.... The State must make this election *by the end of the State's case and before the defense begins to present evidence.* (emphasis ours)"

In the case at bar the State had not begun to present evidence. In fact, the State's attorney requested in substance that he be allowed to proceed with the evidence and to make the election at a later proper time. This request was denied.

It is interesting to note that in the case of *Fortune v. State*, 745 S.W.2d 364 (Tex. Crim.App.1988) that the Court wrote:

"When the State violates the misjoinder rule by alleging different offenses in

the same indictment, the defendant has three options. First, he may object to the charging instrument on the ground that the State has misjoined offenses. The trial court should then grant the motion to quash, or may, instead, force the State to elect the offense upon which it will proceed. *Smith v. State*, 64 Tex. Cr.R. 454, 142 S.W. 1173 (1912); *Blackwell v. State*, 51 Tex.Cr.R. 24, 100 S.W. 774 (1907). Another option is to forego the motion to quash and file a motion requesting that the State be made to elect the count upon which it will proceed. The trial court should grant the motion if the State has misjoined offenses. *Crosslin v. State*, 90 Tex.Cr.R. 467, 235 S.W. 905 (1921). *The State must make the election by the end of the State's case and before the defense begins to present evidence. Crosslin,* supra; *Smith,* supra; *Blackwell,* supra. The third option is to make no motion to quash or objection and urge the error on appeal." (Emphasis added.)

Note that the Court uses the verb "should" concerning the trial court's action. But much more important and paramount is the sentence: "The State must make the election by the end of the State's case and before the defense begins to present evidence." This is what the State requested to do. The State was denied this right. Quoting further from *Fortune:*

"... [T]he reason that the misjoinder was considered error was that *the State had no authority upon which to base multiple convictions from a single indictment.* As such, the error was fundamental and any convictions obtained therefrom in excess of the one-offense one-conviction rule were void."

Furthermore, the matters and the rights of this Appellant–Relator to habeas corpus relief are not before us concerning the fresh indictments against him. Since we do not have properly before us that record of the late, fresh indictments and since there are no writs of habeas corpus before us or applications for writs of habeas corpus before us, dealing with and relevant to the two new separate indictments containing one count each, the decision of the majority is premature; it is, in effect, an advisory opinion.

I would hold that double jeopardy is inapplicable to the case at bar for the following reasons: (1) it was the Appellant–Relator who deliberately sought and moved to terminate a part of the proceedings as against him; (2) it was he who sought to have the State elect and to force the State to announce prematurely which count the State would proceed on; (3) if there was a mistaken concept entertained by an official of the State, it was due to the Appellant's actions and motions; (4) the second count in an indictment was void (see *Fortune, supra* ); (5) there was no factual determination of his guilt or innocence as to either one of the offenses of which Appellant was accused; (6) it was the Appellant who deprived himself of his valuable right to have the first jury try and convict him (at least as to the second count); (7) the citizens of Texas have a valuable right to have at least one opportunity to convict those who have violated the laws of Texas; (8) the proper time to have made an election by the State would have been at the end of the State's evidence and prior to Appellant presenting his defensive case in chief; (9) any additional or double financial burden would fall upon the citizens of Montgomery County and not Appellant since Counsel was appointed to represent him; and (10) each double jeopardy case turn on its own particular facts.

Because no evidence has been presented to enable any trier of fact to make any factual determination in this case, I would conclude that the granting of the mistrial was not the equivalent of an acquittal, and that a re-trial is not barred by the legal restraints pertaining to the Appellant's double jeopardy rights.

Because of the above stated reasons, I would deny the Appellant's application for writ of habeas corpus. Hence, I respectfully dissent.