**James Albert BARKER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–95–307 CR.**

Court of Appeals of Texas,
Beaumont.

Dec. 11, 1996.

Rehearing Overruled Jan. 24, 1997.

▉

---

4. The bill analysis indicates that the only substantive change intended was to make the new

offenses gender-neutral.

Jack McCormick, Conroe, for appellant.

Daniel Rice, District Attorney, Gail Kikawa McConnell, Assistant District Attorney, Conroe, for appellee.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

WALKER, Chief Justice.

A jury convicted appellant for having committed the felony offense of Possession of Marijuana [in an amount greater than five pounds but not more than fifty pounds]. Three enhancement allegations in the indictment raised appellant's punishment exposure to that of a habitual offender. TEX. PENAL CODE ANN. § 12.42(d) (Vernon Supp.1994).[1] Appellant pleaded true to said enhancement allegations and the jury assessed punishment at confinement in Texas Department of

---

1. All statutory references are to the law in effect on the date the offense was committed unless otherwise noted.

Criminal Justice—Institutional Division for a term of forty-five (45) years. Appellant's three points of error are set out in his brief as follows:

> Point of Error One: The evidence was insufficient to "affirmatively link (sic) defendant with the marijuana found in the trunk of defendant's vehicle beyond a reasonable doubt."
>
> Point of Error Two: The Appellant was deprived of his constitutional right to effective assistance of counsel during the guilt/innocence phase of the trial.
>
> Point of Error Three: The trial court erred in denying defense counsel's motion for mistrial after the State's witness alluded to defendant's prior conviction in violation of a motion in limine.

Although the wording of appellant's first point of error seems to indicate a request for a review of the evidence for *legal* sufficiency under the standard set out in *Jackson v. Virginia*,[2] an examination of the argument and authorities provided clearly points to the fact that appellant is asking for a review of the evidence for *factual* sufficiency under the standards announced in *Stone v. State*, 823 S.W.2d 375 (Tex.App.—Austin 1992, pet. ref'd, untimely filed), and recently upheld in *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim.App.1996). Since appellant is requesting only a factual sufficiency review, we must presume that the evidence supporting the jury's verdict was legally sufficient, i.e., constitutionally sufficient for the purposes of the Due Process Clause of the Fourteenth Amendment. *Stone*, 823 S.W.2d at 381.

In factual sufficiency reviews, the appellate court views all the evidence without the prism of "in the light most favorable to the prosecution." *Id.* As such, the reviewing court is therefore permitted to consider the testimony of defense witnesses and the existence of alternative hypotheses. *Id.* The reviewing court should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.*

The State's evidence consisted of the testimony of several law enforcement offi-cers, as well as testimony from a latent fingerprint examiner and a chemist. Appellant was initially observed by Texas Department of Public Safety Troopers John Hart and Ken Brown operating a vehicle on Highway 59 in Montgomery County. Appellant's vehicle was observed traveling from the roadway onto the inside shoulder three times. Appellant was stopped for committing the traffic offense of failure to maintain a single marked lane. Appellant's vehicle exhibited license plates from the State of Missouri. Once stopped, appellant was asked for his driver's license and vehicle registration by Trooper Hart. Appellant responded that he had left his driver's license at a hotel but did produce a social security card. Trooper Hart then added that appellant later stated that he did not stay at a hotel. When questioned about his erratic driving, appellant replied that he had left Missouri the day before traveling to Harlingen, Texas, that he was on his way back to Missouri, and that he was tired. Trooper Hart was questioned further regarding his conversation with appellant as follows:

> Q. [The State] Did you ask him why he had gone to Harlingen?
>
> A. [Hart] Yes, sir, I did.
>
> Q. What did he tell you?
>
> A. He stated he had met a friend at a bar on Friday night, the Friday before, and was taking him to Harlingen so he could go to work at a transmission shop.
>
> Q. Okay. What did you ask him after he told you that?
>
> A. I asked him what his friend's name was.
>
> Q. And did he tell you his name?
>
> A. Well, he hesitated and then he said his name was Fred King.
>
> Q. Did you further inquire why he would take somebody from Missouri to Harlingen for a job like that?
>
> A. Yes, sir, I did.
>
> Q. What did he tell you?
>
> A. He started (sic) that he was taking him down, that he had met him that Friday night, he was taking him down for gas

**2.** 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

money. I asked him why he would take someone all the way from Missouri to Harlingen, Texas just for gas money, someone he had only met Friday night. At that time he responded and said, "Well, it wasn't really a friend of mine. It was a cousin of mine that I hadn't seen in a long time."

Q. After he told you these things, what did you ask him next?

A. After that, well I had asked him how long he knew his friend and when there were so many inconsistencies in his story, I asked him for a consent to search his vehicle.

Q. Why did you ask him to let you look in his car?

A. Well, traveling all the way from Missouri, making a round trip in one day going to Harlingen, Texas I felt the defendant may be transporting narcotics from that area back to Missouri.

Q. What did he say when you asked him if you could look in his car?

A. Without any hesitation at all he said, "Go ahead."

Q. Did it appear to you based on what you observed that he freely and voluntarily allowed you to look in his car?

A. Yes, sir. That's correct.

A search of appellant's vehicle turned up a handrolled marijuana cigarette in the ashtray. The odor of burnt marijuana was also present in the passenger compartment. Appellant was then asked if he had any more marijuana in his vehicle or on his person, or any drugs at all. Appellant initially stated he did not have any more contraband, but when asked again if he had any more marijuana, appellant proceeded to turn over to Trooper Hart a small baggie containing a small amount of marijuana. Appellant continued to insist that the vehicle contained no other contraband. Trooper Hart then requested a drug-sniffing dog be dispatched to the scene. Prior to the dog's arrival, Trooper Hart had checked the vehicle's trunk for contraband and found it to contain a drive shaft, a spare tire, and a container of tools. These items were removed from the trunk by Trooper Hart. When first questioned about the tire, appellant stated that he had purchased it in Harlingen "to use on his pickup truck that he had in Missouri."

Soon afterward, Lt. Craig Lawson of the Precinct 4 Constable's Office of Montgomery County, and his deputy, Cy Gamble, arrived along with the drug dog, Bruce. Apparently, nothing was found inside the vehicle's passenger area or trunk and the dog was placed back in Lt. Lawson's unit. As Deputy Gamble picked up the spare tire, he felt an object inside the tire which made the tire feel heavier than usual. He then notified one of the troopers. As Lt. Lawson and the troopers were in the process of inspecting the spare tire, Deputy Gamble noticed appellant discard a small package that he (appellant) had just removed from his boot. Again, Deputy Gamble called this to the attention to Trooper Brown and Brown retrieved the package from a grassy area on the side of the highway. The package contained marijuana. This action was closely followed by Lt. Lawson cutting the valve stem off the spare tire and observing something packaged in plastic inside the tire. Trooper Hart, Trooper Brown, and Deputy Gamble each testified that they observed a noticeable change in appellant's demeanor after the investigation focused on the spare tire. Prior to that time, appellant was very calm, happy, laughing and joking with the officers. When the spare tire became the center of attention, appellant became noticeably more tense and nervous. Appellant held his dog "really tight" and rubbed the dog "in a much stronger manner."

When the drug dog alerted to the larger package inside the spare tire, appellant was placed under arrest by Trooper Hart and appellant's vehicle was impounded and towed to a truck stop in New Caney. Trooper Hart further described what was found in the spare tire:

Q. [The State] And what did you find when you got there?

A. [Hart] We had the tire broken down and inside the tire there were packages that contained marijuana. They were sealed in plastic and wrapped in duct tape.

Q. When you say they were sealed, can you describe how they were sealed or appeared to be sealed?

A. Yes, sir. They were wrapped real tightly in duct tape and then when you cut into the duct tape, you could see the plastic and then the marijuana inside the plastic. The plastic was heat sealed.

Q. How many heat sealed packages were inside the tire?

A. There were six of them inside the tire.

An examination of the photograph of State's Exhibit 10, the small package of marijuana that Deputy Gamble observed appellant discard, seems to indicate that it was packaged identically to that of the six larger packages of marijuana found in the spare tire. Appellant testified in his own defense completely denying any knowledge of the marijuana inside the spare tire, and explaining his possession of the marijuana in State's Exhibit 10 as having been given to him (appellant) by his cousin after having dropped his cousin off at work in Harlingen. The marijuana in State's Exhibit 10 was apparently for appellant's personal use.

In an attempt to satisfy the dictates of *Clewis,* appellant's brief properly sets out ten evidentiary factors favorable to his position on appeal. They include the following:

(a) The State's latent print examiner could not match appellant's fingerprints to those discovered on the packages of marijuana inside the spare tire.

(b) The State did not submit the spare tire for fingerprint examination to the crime lab in Austin.

(c) Lt. Lawson testified that appellant was cooperative.

(d) Deputy Gamble testified that appellant was not combative or hostile in any way.

(e) Trooper Hart stopped appellant for a traffic violation of failing to maintain a single lane.

(f) Trooper Hart's conclusion that appellant's stories were inconsistent was mistaken.

(g) Trooper Hart indicated that appellant was very receptive and cooperative in permitting the search of the vehicle.

(h) Appellant testified that his cousin took him to a salvage yard, Bob's Used Tire, and purchased the spare tire for $25 on the day of appellant's arrest, as noted by Defendant's Exhibit 1.

(i) Appellant's cousin threw a package of marijuana, identified as State's Exhibit 10, which appellant proceeded to place inside his pants, with said marijuana being wrapped in a similar packaging as the marijuana found inside the spare tire.

(j) Appellant denied purchasing the marijuana found inside the spare tire.

■ In comparing the facts elicited from the State's witnesses with the alternate scenario presented by the appellant, we simply cannot say that the jury's verdict in favor of the State is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. As was noted in *Clewis:*

> The appropriate balance between the jury's role as the judge of the facts and the reviewing court's duty to review criminal convictions is struck by *not* allowing the appellate court to "find" facts, or substitute its judgment for that of the jury;[footnote omitted] rather, when it determines that the verdict is against the *great* weight of the evidence presented at trial so as to be *clearly wrong and unjust,* it must reverse the verdict and remand for a new trial. [emphasis in original]

*Clewis,* 922 S.W.2d at 135.

Apart from the evidence set out above, the State's brief also points to several other pertinent facts that circumstantially prove appellant's knowledge of the marijuana located in the spare tire. These include the fact that appellant was the sole occupant of the vehicle; that appellant admitted owning the vehicle; that appellant was knowledgeable of the street value of marijuana in Missouri; and that appellant admitted to being a smoker of marijuana. Again, the overwhelming weight of the evidence contained in the record before us indicates that appellant exercised care, control, and management over the contraband in the spare tire, and that he knew what he possessed was indeed contraband. *See Cude v. State,* 716 S.W.2d 46, 47 (Tex. Crim.App.1986). Point of error one is overruled.

Appellant's second point of error complains of ineffective assistance of trial counsel during the guilt/innocence phase of the trial. The record before us reflects that appellant timely filed a pro se motion for new trial with an amendment to said motion filed nine days later. The motions allege deficient performance of trial counsel by failing to file a motion for discovery and a "motion for speedy disposition"; and by failing to inspect the physical evidence in possession of the State. To these alleged deficiencies appellant's brief also added that trial counsel made unwise choices with regard to peremptory strikes during jury selection, and that trial counsel was ineffective in failing to have Defendant's Exhibit 1 formally introduced into evidence.

▮ A complaint of ineffective assistance of counsel may be raised in a motion for new trial. *Reyes v. State,* 849 S.W.2d 812, 815 (Tex.Crim.App.1993). The proper standard for determining claims of ineffective assistance under the Sixth Amendment of the United States Constitution is the standard adopted in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In *Strickland,* the Supreme Court adopted a two-pronged analysis for claims of ineffective assistance. *Id.* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. First, appellant must show that counsel performed deficiently. *Id.* Second, appellant must show that the deficient performance prejudiced the defense. *Id.* Appellant must establish these two prongs by a preponderance of the evidence. *Patrick v. State,* 906 S.W.2d 481, 495 (Tex.Crim.App.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1323, 134 L.Ed.2d 475 (1996).

In the course of attempting to establish the *Strickland* prongs, appellant must additionally rebut the strong presumption that counsel performed competently. *Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim.App. 1994). Appellant can rebut this presumption by showing counsel's actions were unreasonable under prevailing professional norms and were not sound trial strategy. *Id.* As had been pointed out on numerous occasions, the appellate record must support an ineffectiveness claim, and if there is no evidence to indicate the reasons for trial counsel's alleg-

edly deficient acts or omissions, an appellate court cannot conclude that counsel performed ineffectively. *Id.; Delrio v. State,* 840 S.W.2d 443, 447 (Tex.Crim.App.1992); *Johnson v. State,* 691 S.W.2d 619, 627 (Tex.Crim. App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 152 (1985); *Howard v. State,* 894 S.W.2d 104, 106 (Tex.App.—Beaumont 1995, pet ref'd). A silent record does not require us to speculate on the reasons behind counsel's decisions. *Jackson,* 877 S.W.2d at 771; *Howard,* 894 S.W.2d at 106. It must also be remembered that isolated errors alone do not indicate ineffective assistance. *Bridge v. State,* 726 S.W.2d 558, 571 (Tex.Crim.App.1986). No Texas court defines the right to effective counsel as the right to error-free counsel. *Hernandez v. State,* 726 S.W.2d 53, 58 (Tex.Crim.App. 1986). Lastly, all of the above standards are applied by examining, without hindsight, the totality of the representation. *Strickland,* 466 U.S. at 688–689, 695, 104 S.Ct. at 2064– 2065, 2068–2069, 80 L.Ed.2d at 694, 698; *Garcia v. State,* 887 S.W.2d 862, 880 (Tex. Crim.App.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1368, 131 L.Ed.2d 223 (1995).

▮ In the instant case, we have no evidence before us to indicate what trial strategy, if any, was involved with regard to the acts and omissions appellant alleges to be deficient performance by trial counsel. Appellant's motions for new trial were apparently not presented to the trial court nor a hearing on said motions ever requested. *See* Tex.R.App. P. 30, 31. Appellant correctly points out in his brief that failure to file pretrial motions, in itself, is not ineffective assistance *per se. See Huynh v. State,* 833 S.W.2d 636, 638 (Tex.App.—Houston [14th Dist.] 1992, no pet.). Appellant is only able to speculate as to trial counsel's motives and any alleged harm to appellant with regard to the failure to file pretrial motions allegation, as well as counsel's decisions concerning the peremptory strikes. Appellant also points to the fact that trial counsel failed to make an independent investigation of the facts of the case. However, other than failing to personally inspect the spare tire in which the contraband was located, appellant does not indicate what further independent investigation

trial counsel failed to conduct. Based upon the record before us, we find that appellant has not met his burden that, based upon the totality of the representation, trial counsel performed deficiently; nor has appellant provided evidence that any alleged deficient performance prejudiced his defense. We reiterate that a silent record as to trial counsel's intentions or strategies concerning decisions made during trial do not require us to speculate on those intentions or strategies. Point of error two is overruled.

Appellant's last point of error complains of trial court error in denying appellant's motion for mistrial following a response by Lt. Lawson during direct examination as set out below:

Q. [The State] When was he [appellant] not cooperative?

A. [Lawson] After he was placed under arrest and carried to the truck stop where we looked in the tire.

Q. When (sic) did he do that was uncooperative?

A. His whole attitude changed. He said he would spend the rest of his life in the penitentiary because he had already been three—

[Trial Counsel]: Your Honor, I object to that as a nonresponsive answer and I'm going to move for a mistrial.

THE COURT: Sustain the objection.

[Trial Counsel]: Move for mistrial, Your Honor.

THE COURT: Motion denied.

[Trial Counsel]: I forgot. The second part of that, excuse me, Your Honor, to ask the jury to disregard the following (sic) comment.

THE COURT: Jury is instructed to disregard the witness' comment.

■ Inadvertent reference to prior incarceration can be cured of its prejudicial effect. *Nobles v. State*, 843 S.W.2d 503, 514 (Tex. Crim.App.1992). Where such prejudicial information is inadvertently placed before the jury by a witness, the general rule is still that an instruction by the trial court to the jury to disregard such information will be sufficient to cure the witness's unresponsive answer. *Id.* In the instant case, the trial court did instruct the jury to disregard Lt. Lawson's comment so that any harm to appellant was cured. Point of error three is overruled. The judgment and the sentence are affirmed.

AFFIRMED.