In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-01-510 CR


____________________



ALLEN ALVIN LEE, JR., Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the Criminal District Court


Jefferson County, Texas


Trial Cause No. 1946






OPINION


 In this appeal from the denial of a pretrial writ of habeas corpus, the appellant,
Allen Alvin Lee, Jr., asserts that his retrial is barred by the double jeopardy clauses of the
federal and state constitutions. U.S. Const. amend. V; Texas Const. art. 1, § 14. Lee
was indicted for theft of services and parts in connection with repairs to his automobile. 
A mistrial was declared after Lee violated a motion in limine during cross-examination,
by mentioning that he had been no-billed by a grand jury. We shall address his two issues
in reverse order.

 Issue two contends, "Principles of double jeopardy bar retrial where the State's
attorney should have known that his line of questions which referred to prior grand jury
actions would lead to answers that violated court orders and to the mistrial." The issue
must be considered in the context of the trial as a whole, which began with the
prosecutor's objecting to Lee's conducting a press conference with a newspaper reporter 
in the hall right in front of the venire. The court granted a motion in limine that prohibited
the parties from mentioning the grand jury proceedings without first approaching the bench
for an evidentiary ruling. 

 The factual basis for the appellant's claim that the prosecutor provoked the mistrial
is not borne out by the record, which clearly shows that the defendant repeatedly gave
nonresponsive answers to the questions posed by the prosecution. The trial court sustained
some fifteen objections to Lee's nonresponsive testimony. For instance, (1) the prosecutor
asked Lee if he drove in the repaired car with the complainant to Lee's house, knowing
that he could then warn the complainant he was trespassing ("trespass warn") and force
him to leave without the vehicle. Lee responded that the complainant told the police that
Lee had kidnapped him. The prosecutor objected, and the witness stated that he would not
answer the question. The court instructed Lee to answer the question put to him. The
witness then stated that he called for a civil standby and the complainant said he kidnapped
him. The prosecutor asked Lee if he trespass warned the complainant. The witness
responded that after the complainant said Lee kidnapped him, Lee did not want him around
his house. The trial court instructed Lee not to yell and to answer the question. The court
told Lee, "Answer the question either yes or no that you trespass warned him." The
witness said, "After - -" but the judge interrupted, saying, "We understand after all that. 
Just answer the question." Two questions later, the prosecutor asked Lee if he called
Officer Evans that afternoon. Lee responded, "After I called - - it was two sides to this
and they're not showing you all of it. I called Jordan - -" The prosecutor objected, then
Lee said, "I called Jordan," and the court advised, "Mr. Lee - - Mr. Lee, once again, I'm
going to tell you to make no sidebar comments to the jury. You answer only the question
that is put to you and. Do you understand this?" Court adjourned for the day. 

 The following day, cross-examination resumed without an improvement in the 
demeanor of the witness. The prosecutor asked Lee where the car was now, and Lee
responded that it was across the street from the courthouse in the parking lot for the jury
to look at if they want to. Asked if the car runs, Lee replied that he had the car towed to
the parking lot. The prosecutor asked him when. Lee replied that he had it towed there
Sunday, and that he had a Triple AAA card if the prosecutor wanted to verify. The
prosecutor stated, "No," but, undaunted, Lee continued, "The car hasn't ran since it broke
down." The State objected to the nonresponsive statement, and the court instructed, "Mr.
Lee, do not volunteer information. Listen carefully to the question. . . . Listen and
answer only the question asked of you. If your attorney wants to ask follow-up questions
to the questions [the State's attorney] asks, he's free to do so." The prosecutor than asked
if Lee recalled taking his car to a different auto shop. The witness's response was that he
tries to take very good care of his cars. Then again the court sustained the prosecutor's
objection and, with the following question, instructed the witness, "Mr. Lee, the question
was do you remember taking it there before you took it to [the complainant's]?" Lee
replied, "Yeah. This was way back in the wintertime." The court stated, "The question
is either yes, you remember or, no, you didn't have it done." The trial court sustained
several more objections to the nonresponsive nature of Lee's testimony before the court
instructed the witness, as follows: 

 THE COURT: Mr. Lee, please, listen carefully to the question.

 THE WITNESS: I thought I was answering the question.

 THE COURT: It's not that difficult.

 THE WITNESS: I really did.

 THE COURT: No, sir. You constantly want to add and explain
things. Just listen carefully to the question and answer only the question
that's asked of you and this trial will move along a lot faster.

 THE WITNESS: Yes, sir. I'm trying that. I thought I was. I really
did.

 THE COURT: All right.


 Next, the following discourse occurred: 


 [THE PROSECUTOR]: [A previous witness] was mistaken again
when he testified that you drove the car up there several times and talked to
mechanics afterwards?

 THE WITNESS: Oh, yeah. He's quite mistaken. That car has never
left my driveway. When it broke down in my driveway, that car has been
sitting there and been sitting there because I couldn't get it repaired because
of this circumstances here. [The previous witness] said a technician brought
the car but [the complainant] brought the car up there, if you remember
correctly.

 [THE PROSECUTOR]: I'm not talking about that.

 THE WITNESS: Well, that's what I'm talking about.

 [THE PROSECUTOR]: Well, I'm talking about you.

 THE WITNESS: He lied there. He said a technician.

 [THE PROSECUTOR]: Your Honor, I'm going to object. He's non
responsive.

 THE COURT: Mr. Lee, this is the last time I'm going to warn you.

 THE WITNESS: Yes, sir.

 THE COURT: If you want your testimony stricken and be barred
from - - 

 THE WITNESS: No, I do not. No, I do not.

 THE COURT: You listen carefully to me, sir. You answer only the
question that's asked of you.

 THE WITNESS: Yes, sir. I'm sorry.

 THE COURT: Now, can you understand that?

 THE WITNESS: I'm trying my best.

 THE COURT: No. No. What is difficult about it?

 [DEFENSE COUNSEL]: Your Honor, I'm going to object to the
Court's admonishing this witness in the presence of the jury this way.

 THE WITNESS: Yes, sir.

 [DEFENSE COUNSEL]: If that admonishment is to take place, it
should be outside of the presence of the jury. It prejudices the defendant and
I'll ask for a mistrial. 

 THE COURT: That is denied. He's bringing it on himself.

 It's the last time, Mr. Lee. Answer only the questions asked of you.

 THE WITNESS: Your Honor, should . . . I just answer yes or no?

 THE COURT: You answer - - it's not that difficult.

 THE WITNESS: Well, I - - I don't want my record stricken. Should
I just answer yes or no then?

 THE COURT: No, sir. Again, listen and just answer the question.

 THE WITNESS: When do I go on and give an explanation to my
answers?

 [DEFENSE COUNSEL]: Your Honor, I'm going to ask for a hearing
outside the presence of the jury. This is prejudicial to my client. 


 The court removed the jury, and defense counsel moved for a mistrial on the basis
that the court's admonitions had given the jury the impression that the court had
determined that Lee was not being truthful and was being evasive. The court denied the
motion, explaining, as follows:

 THE COURT: Mr. Lee's conduct has taken place in the presence of
the jury repeatedly and the State has made objections, right. The Court has
admonished him numerous times to answer only the questions put to him. 
He constantly wants to go forward and add and add to his testimony.

 He is not going to run this trial. He does not run this courtroom. 
Now, if he's going to testify, he has got to abide by the Rules of Evidence. 
These questions are not difficult. There is nothing difficult about these
questions.


 . . . .


 [DEFENSE COUNSEL]: So, as I understand the Court's instructions,
for the benefit of Mr. Lee as a witness, then the Court's instruction is that
he is to answer only the question with no opportunity to give any explanation
of that answer.

 THE COURT: You have a right to come back and ask Mr. Lee to
explain his answers, if you want to. The State has a right to ask a question
and to expect an answer to that question only so as not to open the door,
right?


 . . . .


 [DEFENSE COUNSEL]: All right, Your Honor. I'll have to register
an objection to the Court in limiting this witness, this Defendant's ability to
testify in his own behalf, and so I'll simply make that objection.

 THE COURT: Yes, sir. Objection is overruled.

 I will again state to counsel that you have a right to come back. If
you feel like his testimony has not been complete or you think he needs to
offer an explanation to any answers he has given to the State, you certainly
have a right to come back and ask him to expound on that answer and then
he needs to be responsive to your question, right. That's all I'm asking, is
this trial to be as smooth as possible, because the longer he wants to add on
to the answer for the State - - the State has a right not to open doors, right,
to ask that question and to expect a reasonable response to that question. 


 The jury returned to the courtroom. The State developed some of the discrepancies
in Lee's testimony, the differences between his court testimony and the statement Lee gave
to the police, the points on which Lee controverted the testimony of other witnesses, and
the availability of the mechanic that Lee claimed examined the vehicle. Lee testified that,
with the complainant as his passenger, Lee drove the vehicle to his home with the intention
of going inside and giving the complainant the money for the repairs. The car stalled at
the shop and in Lee's driveway. Lee testified that he entered the house intending to give
the complainant his money, but once inside he called the police for a civil standby while
he trespass warned the repairman. The court sustained the State's hearsay objection to
Lee's statement that the officers said it was a civil matter. Then the prosecutor asked,
"You called the police - - [the complainant] had not threatened you prior to you going into
the house, had he?" Lee replied, "I felt like [the complainant] got in an argument over the
car and, you know - - you know, that wasn't the right thing. That was enough. Let the
cops come down here and let them handle it. It died in my driveway. The air came - -"
The prosecutor again objected to the nonresponsiveness of the witness. Next, the
prosecutor established that Lee had researched mechanics liens before driving the car to
his house. Lee admitted that he had told a police officer, "I just outsmarted the guy and
got the car back to my property." Lee stated, "If [the complainant] would have had the
car running, he would have had his money and we wouldn't be sitting there." The
prosecutor asked, "You didn't have any money back then, Mr. Lee, did you, sir?" The
witness responded, "Didn't he say he saw money in my car. Now, if you want to
argumentative with me - -" The court sustained the State's nonresponsiveness objection. 
The prosecutor next inquired about various affidavits Lee filed in 1999, which claimed that
Lee had little or no income. 

 Lee admitted that when he initially appeared in this case, he told the court that he
did not have the money to hire an attorney. The trial court sustained a defense objection
to the lack of a time frame. The prosecutor asked, "Let's talk about 1999, the year that
we're talking about here, this nine month period. You don't have enough money to hire
a lawyer, correct?" The trial court instructed counsel, "Tie it down. What month?" The
prosecutor asked, "Let's talk about the summer of 1999 when you were indicted for this
case. You didn't have enough money to hire a lawyer, did you?" Lee replied, "You mean
when I was no billed for this case. When the grand jury - -" This is the point at which
the State moved for a mistrial. Defense counsel did not argue against the granting of a
mistrial, but he did argue that Lee's violation of the motion in limine was the prosecutor's
fault. The court stated, "He knows the Court's ruling was that under no circumstance was
that to come in, right?" Defense counsel replied, "Well, simply our position, Your
Honor, is that the State opened the door." The trial court declared a mistrial, stating its
opinion that Lee's comments were deliberate, and that he had considered holding Lee in
contempt but decided not to. The defendant thanked the court for not holding him in
contempt. The trial judge transferred the case to another judge, who denied relief on Lee's
petition for writ of habeas corpus. 

 On appeal, Lee relies on Peden v. State, 917 S.W.2d 941, 956 (Tex. App.--Fort
Worth 1996, pet. ref'd), and its application of Bauder v. State, No. 1058-94, 1995 WL
713030 (Tex. Crim. App. Dec. 6, 1995), to support his argument that a retrial must be
barred. The Court of Criminal Appeals withdrew that opinion and replaced it with an
opinion that did not include the "should have known" language quoted in Peden. See
Bauder v. State, 921 S.W.2d 696 (Tex. Crim. App. 1996) ("Bauder I"). As ultimately
decided by the Court of Criminal Appeals, Bauder stated:

 a successive prosecution is jeopardy barred after declaration of
a mistrial at the defendant's request, not only when the
objectionable conduct of the prosecutor was intended to induce
a motion for mistrial, but also when the prosecutor was aware
but consciously disregarded the risk that an objectionable event
for which he was responsible would require a mistrial at the
defendant's request. 


Id. at 699 (emphasis added). Bauder I, together with the opinion following remand,
represent a state constitutional expansion over federal double jeopardy protections. Bauder
I, 921 S.W.2d at 698-99 (The prosecutor's specific intent is not a relevant inquiry when
the government purposefully terminates a trial in order to repeat it under more favorable
conditions.); Ex parte Bauder, 974 S.W.2d 729, 732 (Tex. Crim. App. 1998) ("Bauder
II") (Retrial is barred if the defendant is required to move for mistrial recklessly provoked
by the prosecutor.) (2) Although Bauder concerns situations where the defendant moved for
mistrial for prosecutorial misconduct, Lee seeks to extend that analysis to his situation,
where the State moved for mistrial for misconduct by the defendant. As we appreciate
Lee's argument, the prosecutor's subjective intent to provoke testimony about the grand
jury proceedings is irrelevant because the State's attorney consciously disregarded the risk
that the motion in limine would be violated by a legitimate response to his cross-examination.

 Lee's argument is simply not supported by the record. The prosecutor did not ask
Lee to describe a prior action by a grand jury. He asked if Lee had money. A question
using the date of indictment as a point of reference for a question regarding indigence
cannot reasonably be anticipated to induce a response about a grand jury action, other than
indictment, that occurred at an earlier time and was unrelated to Lee's having sought
indigent status. And since Lee was in fact indicted, it cannot reasonably be argued that the
prosecutor had misstated fact in such a way that he should have anticipated Lee would
correct the misstatement. The prosecutor might have anticipated that Lee would violate
the motion in limine by mentioning that he had been no-billed, because Lee had already
established a pattern of nonresponsive testimony. But it was the appellant, not the
prosecutor, who was responsible for the objectionable event that lead to a mistrial. Lee
had already been warned that his testimony might be stricken from the record if he
continued to violate the court's admonishments. Lee and only Lee demonstrated a
conscious disregard of the risk of a mistrial from the objectionable event. Literally and
figuratively, Lee got what he asked for. Issue two is overruled.

 Issue one contends, "The trial court erred in denying the application for writ of
habeas corpus because double jeopardy principles bar retrial where a manifest necessity
did not require the trial court to grant the State's motion for mistrial." 

 The appellant's argument presumes the jury was dismissed without his consent, but
the State contends that Lee consented to the declaration of a mistrial. "A defendant who
does not object to a declaration of mistrial, despite an adequate opportunity to do so, has
impliedly consented to the mistrial." Ledesma v. State, 993 S.W.2d 361, 365 (Tex. App.--Fort Worth 1999, pet. ref'd) (citing Torres v. State, 614 S.W.2d 436, 441-42 (Tex. Crim.
App. 1981)). We described the events in their context in our discussion of the appellant's
other issue, so we will not repeat them here. The trial court granted the State's motion for
mistrial after Lee violated the motion in limine by giving a nonresponsive answer during
cross-examination. At that point, defense counsel had already twice requested a mistrial
in connection with the trial court's previous attempts to curb Lee's persistent
nonresponsiveness during cross-examination. When the State moved for a mistrial,
defense counsel argued only that by mentioning the word "indictment" the State had
opened the door to the defendant's response about the prior no-bill. Defense counsel did
not argue that an instruction to disregard would cure the prejudicial effect of the
defendant's misconduct on the jury. It appears that defense counsel, who had already
asked for a mistrial himself, was merely trying to obtain a finding that would preclude a
retrial. As we have already stated, the prosecutor did not elicit the objectionable
testimony. The record supports a finding that the defendant consented to the declaration
of a mistrial, as opposed to some less drastic remedy for his misconduct. 

 Where manifest necessity exists to declare a mistrial, the constitutional prohibition
against double jeopardy is not implicated and retrial is permitted. Oregon v. Kennedy, 456
U.S. 667, 672, 72 L.Ed.2d 416, 102 S.Ct. 2083, 2087 (1982). Two cases in particular
address the issue of manifest necessity where the mistrial resulted from the defendant's
misconduct. In Arizona v. Washington, 434 U.S. 497, 499, 54 L.Ed.2d 717, 724, 98
S.Ct. 824 (1978), defense counsel made improper remarks during his opening statement. 
The Supreme Court noted, "Because of the wide variety of circumstances that may make
it necessary to discharge a jury before a trial is concluded, and because those
circumstances do not invariably create unfairness to the accused, his valued right to have
the trial concluded by a particular tribunal is sometimes subordinate to the public interest
in affording the prosecutor one full and fair opportunity to present his evidence to an
impartial jury." 434 U.S. at 505; 54 L.Ed.2d at 728. The strictest scrutiny is appropriate
when the basis for the mistrial is the unavailability of critical prosecution evidence; but,
where the difficulty leading to mistrial arises from prejudicial comments by defense
counsel, the trial judge's determination is entitled to special respect. Id. at 508, 510-11;
54 L.Ed.2d at 730-31. Although it conceded that mistrial was not "necessary" in a strict,
literal sense, the Court reasoned, "the overriding interest in the evenhanded administration
of justice requires that we accord the highest degree of respect to the trial judge's
evaluation of the likelihood that the impartiality of one or more jurors may have been
affected by the improper comment." Id. at 511; 54 L.Ed.2d at 732. In Harrison v. State,
788 S.W.2d 18 (Tex. Crim. App. 1990), the Court of Criminal Appeals took a more
restrictive approach toward "manifest necessity." In that case, the trial court declared a
mistrial after defense counsel injected himself as a fact witness. Id. at 20. After the
intermediate court found the defendant did not consent to the mistrial, (3) the Court of
Criminal Appeals found that the trial judge failed to consider less drastic alternatives. Id.
at 23. The high court reasoned that at the point of mistrial defense counsel was merely a
potential witness, and no disciplinary rule had been violated; so manifest necessity was not
shown. Id. at 24. In contrast to the facts of Harrison, the trial court in our case
repeatedly admonished Lee, conducted a hearing outside the presence of the jury when Lee
continued his deliberate attempts to inject improper and prejudicial evidence by violating
the court's limiting order, and considered alternatives to a mistrial before granting the
State's motion. As was the case in Arizona v. Washington, where the sensitive problem
of possible juror bias is created by the defense, the public's interest in fair trials must
prevail over the defendant's valued right to have his trial concluded by the first jury
impaneled. Arizona v. Washington, 434 U.S. at 516; 54 L.Ed.2d at 735. A finding of
manifest necessity is supported by the record. Issue one is overruled. The order denying
habeas corpus relief is affirmed.

 AFFIRMED.

 _____________________________

 RONALD L. WALKER

 Chief Justice 


Submitted on April 4, 2002

Opinion Delivered May 29, 2002

Do Not Publish 

Before Walker, C.J., Burgess and Gaultney, JJ.


DISSENTING OPINION


 I respectfully dissent and would sustain issue one. The majority's exact rationale
is not clear. On one hand they state: "The record supports a finding that the defendant
consented to the declaration of a mistrial, as opposed to some less drastic remedy for his
misconduct." On the other hand they state: "A finding of manifest necessity is supported
by the record." Either they have alternative rationales or joint rationales. However, they
are inconsistent rationales. If Lee consented to the mistrial, then there is no necessity for
any other discussion. Harrison v. State, 767 S.W.2d 803, 806 (Tex. Crim. App. 1989)
(Where a defendant consents to a mistrial, the "manifest necessity" doctrine does not come
into play). If the majority is indeed holding that Lee consented to the mistrial, I do not
reach the same conclusion. Certainly, Lee's previous motion for mistrial was no consent
to the mistrial actually granted. Lee's counsel was arguing against any sanction of Mr.
Lee. For this court to hold Lee waived his objection merely by failing to explicitly state
"I object," would adopt the hypertechnicalities that were rejected by the Court of Criminal
Appeals in Lankston v. State, 827 S.W.2d 907, 908-09 (Tex. Crim. App. 1992); accord
Ex parte Little, 887 S.W.2d 62, 66 (Tex. Crim. App. 1994).

 The question of manifest necessity is even less onerous to analyze. Recently the
concept was discussed in Parrish v. State, 38 S.W.3d 831, 834-35 (Tex. App.--Houston
[14th Dist.] 2001, pet. ref'd):

 While the Supreme Court has declined to formulate rules based on
categories of circumstances in which manifest necessity exists, a trial judge's
discretion to declare a mistrial based on manifest necessity is limited to "very
extraordinary and striking circumstances...." See Little, 887 S.W.2d at 65. 
As a general rule, manifest necessity exists where the circumstances render
it impossible to reach a fair verdict, where it is impossible to proceed with
trial, or where the verdict would be automatically reversed on appeal because
of trial error. See Ex Parte James, 967 S.W.2d 498, 500 (Tex.
App.--Amarillo 1998, pet. ref'd). Not only is "necessity" the operative
word, but there must be a "high degree" of necessity that the initial trial
come to a premature end. See Arizona, 434 U.S. at 516, 98 S.Ct. at 835. 
The trial court must give adequate consideration to the defendant's right not
to be subjected to double jeopardy. See Torres, 614 S.W.2d at 442. Before
granting a mistrial on grounds of manifest necessity, a trial court must
determine whether alternative courses of action are available and, if so,
choose one that is less drastic than a mistrial. See Brown v. State, 907
S.W.2d 835, 839 (Tex. Crim. App. 1995). The trial court's objective in
those circumstances is to choose the alternative that best preserves the
defendant's right to have the trial completed before a particular tribunal, that
is, the jury that has already been seated. See id.


 Earlier, in Brown v. State, 907 S.W.2d 835, 839 (Tex. Crim. App. 1995) the Court
of Criminal Appeals pronounced:

 Despite a trial judge's discretion in declaring a mistrial based on
manifest necessity, the trial judge is required to consider and rule out "less
drastic alternatives" prior to granting a mistrial. Little, 887 S.W.2d at 66;
Harrison, 788 S.W.2d at 22; and, Torres, 614 S.W.2d at 442. Thus, prior
to granting a mistrial based on manifest necessity, the trial judge must review
the alternative courses of action and choose the one, which, in light of all the
circumstances, best preserves the defendant's "right to have his trial
completed before a particular tribunal." Harrison, 788 S.W.2d at 23-24. 
Where a trial judge grants a mistrial despite the available option of less
drastic alternatives there is no manifest necessity and we will find an abuse
of discretion. Little, 887 S.W.2d at 66; and, Harrison, 788 S.W.2d at
23-24. We have, in fact, held on a number of occasions that no manifest
necessity existed where the trial judge failed to consider less drastic
alternatives to the mistrial. See, Harrison, supra; Torres, supra; Little,
supra; and, Ex parte Hubbard, 798 S.W.2d 798 (Tex.Cr.App.1990).


 It is clear the judge was frustrated with Lee's violation of the motion en limine and
felt the violation was deliberate. There is nothing to indicate the judge reviewed any
alternative courses of actions, such as instruction regarding a no-bill (4) or an instruction to
disregard. Certainly, Lee's comment was not so prejudicial to the state that an instruction
to the jury to disregard would not have cured any potential harm. This court has repeated
many times (5) the axiom, or some variation, noted in Louis v. State, 61 S.W.3d 593, 598
(Tex. App.--Amarillo 2001, pet. ref'd) (citation omitted): 

 Because the trial court instructed the jury to disregard the comment,
we not only presume that the jury obeyed, but also conclude that the
instruction ameliorated any potential harm. Wilkerson v. State, 881 S.W.2d
321, 327 (Tex.Crim.App.1994), cert. denied, 513 U.S. 1060, 115 S.Ct.
671, 130 L.Ed.2d 604 (1994) (holding that an instruction to disregard a
comment normally cures the error). 


Had the trial court simply instructed the jury to disregard, the trial would have proceeded
and a second trial would not have been necessary. In Hubbard v. State, 753 S.W.2d 496
(Tex. App.--Beaumont 1988), aff'd, 798 S.W.2d 798 (Tex. Crim. App. 1990), this court,
with one justice dissenting, acknowledged: "Once jeopardy attaches . . . the defendant
possesses a valued right to have his guilt or innocence determined before the first trier of
fact." Id., 753 S.W.2d at 499 (citing Torres v. State, 614 S.W.2d 436, 441 (Tex. Crim.
App. 1981)). Neither the words nor the concept have any meaning unless appreciated,
applied and enforced by the judiciary. As irritating as Lee may have been, his actions did
not rise to the level where his rights should have been disregarded. 

 I would hold there was no consent to the mistrial nor was there any manifest
necessity for declaring a mistrial. Lee's second trial is barred by double jeopardy. I
would sustain issue two. I respectfully dissent.




 DON BURGESS

 Justice

Dissent Delivered

May 29, 2002

Do not publish



1. What follows is fairly representative of the trial, but by no means does it include
all of Lee's nonresponsive testimony.
2. Ultimately, the San Antonio Court of Appeals found no conscious disregard by
the prosecutor and affirmed the denial of the writ of habeas corpus. Ex parte Bauder, 2
S.W.3d 376, 377-78 (Tex. App.--San Antonio 1999, pet. ref'd). A minority of the judges
of the Court of Criminal Appeals has argued that Bauder I should be overruled. State v.
Lee, 15 S.W.3d 921, 927 (Tex. Crim. App. 2000)(Keasler, J., concurring). On April 10,
2002, the Court of Criminal Appeals granted the State's petition for discretionary review
to re-examine Bauder I and its progeny. See Ex parte James Michael Peterson, No. 05-01-01093-CR, 2001 WL 1671157 at *3 (Tex. App. Dallas, Dec. 20, 2001, pet. granted)
(unpublished opinion).
3. Harrison v. State, 772 S.W.2d 556 (Tex. App.--Dallas 1989, pet. granted).
4. For example: "In this case you have heard that the defendant was previously "no-billed" prior to the return of the instant indictment. You are instructed to give no weight
to this in your deliberations and return a verdict based solely on the evidence admitted
before you."
5. Since I have been on the court, at least eight have been published: Newman v.
State, 49 S.W.3d 577, 581 (Tex. App.--Beaumont 2001, pet. ref'd); Thompson v. State,
12 S.W.3d 915, 921 (Tex. App.--Beaumont 2000, pet. ref'd); Guillory v. State, 956
S.W.2d 135, 137 (Tex. App.--Beaumont 1997, no pet.); Barker v. State, 935 S.W.2d 514,
520 (Tex. App.--Beaumont 1996, pet. ref'd); Green v. State, 876 S.W.2d 226, 229 (Tex.
App.--Beaumont 1994, no pet.); Eaglin v. State, 872 S.W.2d 332, 338 (Tex. App.--Beaumont 1994, no pet.); Brown v. State, 750 S.W.2d 340, 341 (Tex. App.--Beaumont
1988, no pet.); Bagley v. State, 708 S.W.2d 585, 589 (Tex. App.--Beaumont 1986), rev'd
on other grounds, 776 S.W.2d 582 (Tex. Crim. App. 1989).