Bobby Joe HARRISON, Appellant,

v.

The STATE of Texas, Appellee.

No. 1048–89.

Court of Criminal Appeals of Texas, En Banc.

April 18, 1990.

---

Raymond G. Wheless, Plano, for appellant.

Tom O'Connell, Dist. Atty., and Susan L. Free, Asst. Dist. Atty., McKinney, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

Appellant pled guilty to hindering apprehension. See V.T.C.A. Penal Code, Sec. 38.05. The trial court assessed punishment at ten days' confinement and a $500.00 fine. The Court of Appeals affirmed the conviction, finding that the trial court did not err in denying appellant's plea of double jeopardy because the "manifest necessity" for the mistrial implicitly found by the trial court was within the trial court's discretion. *Harrison v. State*, 721 S.W.2d 904 (Tex.App.—Dallas 1986). This Court granted appellant's petition for discretionary review to address the double jeopardy issue, but remanded the cause to the Court of Appeals for its determination of whether appellant consented to the mistrial of his first trial. *Harrison v. State*, 767 S.W.2d 803 (Tex.Cr.App.1989). On remand the Court of Appeals decided that the totality of the circumstances surrounding the declaration of the mistrial showed that appellant did not consent to the mistrial. *Harrison v. State*, 772 S.W.2d 556 (Tex.App.— Dallas 1989). The Court of Appeals reaffirmed its earlier conclusion that double jeopardy principles were not violated because manifest necessity was shown for the declaration of the mistrial. We granted appellant's petition to review the merits of the Court of Appeals' decision concerning manifest necessity.

On September 18, 1983, Officer A.D. Ingram of the McKinney Police Department stopped appellant's brother, Bryan Harrison, for running a stop sign. After Ingram issued Bryan a traffic citation, Bryan sped away, throwing dust and gravel onto the patrol car. Ingram pursued Bryan who failed to stop at several more stop signs. Bryan stopped at his house and exited the car. Ingram attempted to arrest him and a struggle ensued between the two. Ingram testified that Bryan struck him in the eye right before appellant grabbed Ingram from behind. As a result of appellant's actions, Bryan evaded arrest that night. Appellant was arrested for hindering apprehension.

Appellant originally pled "not guilty" before a jury. During the trial, defense counsel cross-examined Ingram about his testimony that he had received a black eye as a result of the struggle:

[Defense Counsel]: Do you recall coming to the window to look to see who was getting Mr. Harrison [appellant] out of jail on September 19, 1983?

[Ingram]: I remember walking up to the door, but I don't remember seeing anyone.

[Defense Counsel]: You don't remember seeing anyone?

[Ingram]: No, sir.

[Defense Counsel]: Would you be surprised if I said I remember seeing you?

[Ingram]: No, sir.

[Defense Counsel]: If you'd had a black eye, do you think I would have seen it through that window?

[Ingram]: I couldn't say, because I didn't see anyone in that lobby.

Appellant's attorney asked a couple of additional questions and passed the witness to the State. The prosecutor asked several questions and then called another witness. After examining this witness for a short time, the State made a motion outside the presence of the jury to disqualify defense counsel because he had "made himself a fact witness" in the case by his questioning concerning Ingram's black eye. After discussing the testimony, the trial judge stated that he could not see anything wrong with what defense counsel did. The judge expressed doubt that the prosecutor had a case showing that the defense attorney would be disqualified. The State argued that if the trial court did not grant the motion, the State might call defense counsel as a witness in the case. After a brief recess the State argued that the Texas Code of Professional Responsibility, DR 5–101 and DR 5–102,[1] required that defense counsel withdraw. The trial judge did not

1. **DR 5–101. Refusing Employment When the Interests of the Lawyer May Impair His Independent Professional Judgment.**

(A) Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests.

(B) A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:

(1) If the testimony will relate solely to an uncontested matter.

(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.

(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.

**DR 5–102 Withdrawal as Counsel When the Lawyer Becomes a Witness.**

(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).

(B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client. See now Tex.Discp. R.Prof.Con. 3.08.

at first see how defense counsel's questions presented any issue:

> THE COURT: How is whether [defense counsel] noticed the black eye on the officer a material issue?
>
> [THE PROSECUTOR]: Under the facts, it's a material issue because apparently from what [defense counsel] is saying, there was never a black eye. That's what I get from the testimony.
>
> "Wouldn't I have seen a black eye?" THE COURT: It's not an element of the offense, is it?

After further argument from the prosecutor contending that the question concerned the credibility of the witness and the "material issue" of whether or not the officer was subdued, the trial judge agreed with the prosecutor, stating:

> All right. Mr. Shipman, the DA, has advised the Court that he would call Mr. Wheless [defense counsel] as a witness, since Mr. Wheless has raised the issue of the credibility of Officer Ingram.
>
> The only way to test Mr. Wheless' credibility in disputing Officer Ingram is to call Mr. Wheless as a witness.
>
> In fairness to the State, the State should be allowed to do that. I think it would be a hardship on Mr. Harrison not to have Mr. Wheless as a lawyer, although certainly another lawyer can be educated about the case. If Mr. Wheless is called as a witness, I think it's my duty to disqualify him as counsel, because of all the ramifications of testing Mr. Wheless' credibility and an attempt by the State's attorney to possibly impeach Mr. Wheless and get into a rather messy situation. Mr. Wheless indicates that if he were called as a witness, he would ask the Court to withdraw. Is that correct?
>
> [Defense Counsel]: That's correct, Your Honor.
>
> [The Court]: Okay. So I intend to bring the jury back in and declare a mistrial, and retry the case at another time.
>
> [Prosecutor]: I would like to make it clear that the State might call Mr. Wheless. Not necessarily that we would, but I do feel like it's our right.

In dismissing the jury after declaring a mistrial, the trial judge explained that a dispute over the officer's credibility was presented by defense counsel's questioning which was really a dispute between defense counsel and the officer. "What we have is a squabble over whether or not Officer Ingram had a black eye, which is material to the issue of whether or not he was subdued in this case."

Some months later the court recited that a hearing had been held on appellant's plea of double jeopardy and that,

> [P]ursuant to Disciplinary Rule 5–102 the case of Bert Wheeler's Inc. vs. Ruffino, this Court has disqualified Mr. Wheless from representing Mr. Harrison as Mr. Wheless, in this Court's opinion, became a fact witness and injected himself into the evidence in the case while cross examining Police Officer A.D. Ingram at the trial.

The Court of Appeals held that because of counsel's questioning of Ingram regarding the black eye, the jury's perspective would be tainted by counsel's double role as counsel and unsworn witness. The court stated that defense counsel's personal knowledge had a direct bearing on the credibility of Ingram, which violated DR 5–102(B), and that because defense counsel *might* be called as a witness, under the facts of this case he should be disqualified. Since he would be disqualified, a mistrial would be appropriate.

■ The Fifth Amendment prohibition against twice putting a person in jeopardy for the same offense protects a criminal defendant's right to have his trial completed by a particular tribunal. *Wade v. Hunter*, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949); *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). This right "must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." *Wade v. Hunter*, 336 U.S. at 689, 69 S.Ct. at 837.

■ Thus, in some instances, retrial after a mistrial is appropriate. When a mistrial has been declared without the consent

of the defendant, manifest necessity must be shown for such declaration. The standard for appellate review of the trial court's exercise of discretion in declaring a mistrial because of manifest necessity has often been quoted:

> We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the changes of life, in favour of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office.

*United States v. Perez,* 9 Wheat. 579, 580, 6 L.Ed. 165 (1824).

*Arizona v. Washington,* 434 U.S. at 514–516, 98 S.Ct. at 834–836, emphasizes that in the context of a declaration of mistrial involving an assessment of the prejudicial impact upon the jury of some impropriety, the trial judge's decision is entitled to great deference; whereas, the strictest scrutiny is employed when some intentional misconduct by the prosecutor is the basis for the mistrial. This exercise of discretion means that the trial judge must consider the defendant's right to have his trial completed by the particular tribunal and balance society's interest in a fair judgment. In *Arizona v. Washington* the Supreme Court noted that just because a different judge might have acted differently did not mean the trial judge's declaration of a mistrial was incorrect. But, the determination of

whether a trial judge exercised sound discretion also normally means that the trial judge must consider less drastic alternatives to a mistrial. In *Arizona v. Washington* the Supreme Court noted that the trial judge need not necessarily expressly state these considerations of less drastic alternatives in the record as long as his basis for the mistrial order is adequately shown by the record. See also *Torres v. State,* 614 S.W.2d 436 (Tex.Cr.App.1981).

In the instant case, the Court of Appeals held that defense counsel's questions concerning Ingram's black eye were improper because they injected counsel as a fact witness in the case, thus making him a potential witness, and because the nature of the questions tainted the jury's perspective of counsel as counsel and an unsworn witness. The court relied upon *United States v. Peng,* 766 F.2d 82 (2d Cir.1985). In *Peng* defense counsel cross-examined one of the State's witnesses who had allegedly been a victim of the defendant's fraud. Defense counsel questioned the witness about a meeting attended by defense counsel and the witness some time after the defendant had been arrested on the charges. The witness and defense counsel disagreed as to what was said in the nature of negotiations at that meeting. The *Peng* court noted that the exchanges between defense counsel and the witness clearly showed that defense counsel was a participant in an event relating to the alleged fraud for which the defendant was on trial. The *Peng* court concluded that as a result of this cross-examination, defense counsel's credibility had been "irreversibly injected as an issue in the trial." In finding that the district court was justified in holding that New York State's disciplinary rules required that defense counsel be disqualified, the *Peng* court stated that "[t]he matter in which [defense counsel's] credibility was implicated was not of merely tangential importance to the trial." The district judge's declaration of a mistrial due to his evaluation of the likely effect upon the jury of defense counsel's disqualification was entitled to great deference. The declaration of a mistrial after finding that

disqualification of defense counsel was necessary, was within the district court's discretion and was supported by the " 'high degree' " of necessity required before a defendant may be deprived of his right to have his trial completed before a particular tribunal. *Id.* at 88.

■ In contrast to the facts of *Peng,* the credibility of defense counsel in the instant case was not "irreversibly injected as an issue in the trial." Counsel asked one question which arguably implied that counsel believed Ingram did not have a black eye as he had claimed. While this certainly was directed at Ingram's credibility through counsel's personal knowledge, given that no testimony, questioning, or evidence was shown which cast doubt or distrust on Ingram's credibility regarding *appellant's* actions in committing the offense, the one question regarding the black eye is of "merely tangential importance." It was not so extreme as to render defense counsel's credibility an issue before the jury as it was in *Peng.* In fact, although the prosecutor eventually changed the judge's mind, initially, the trial judge did not think the questioning was even improper, let alone a "material issue." In the context of the case that had been presented to that point, the question of the black eye and defense counsel's credibility was a minor issue.

In *Torres,* 614 S.W.2d 436, this Court found that the trial judge's declaration of a mistrial violated the defendant's double jeopardy rights for two reasons. First, there was no evidence in the record to support the trial judge's conclusion that a witness had been intimidated; and second, the trial judge gave no consideration to any less drastic alternatives or to the double jeopardy right of the defendant.

■ Like the judge in *Torres,* the trial judge in the instant case gave no consideration to any less drastic alternatives such as an instruction to disregard. In a case like the instant one where the issue is of minor significance to the case, consideration of lesser alternatives is certainly most important when weighing a defendant's double

jeopardy right along with such considerations.

In *Arizona v. Washington* the Supreme Court began with the assumption that defense counsel's actions in arguing certain information to the jury during opening argument were improper. The defense counsel told the jury that the prosecutor had purposely withheld and hidden evidence and that as a result, the defendant was granted a new trial by the Supreme Court of Arizona.

Even if we assume that defense counsel in the instant case should not have asked the question about the black eye because it injected personal knowledge into the case, the degree of impropriety or the nature of the impropriety must be considered in evaluating the manifest necessity for declaring a mistrial. The factual situations of *Peng* and *Arizona v. Washington* demonstrate serious issues which might irreversibly taint a jury's view of a case. The questions in this case do not reach such an extreme. The significance of the issue presented by the questions posed in the instant case in terms of the relative importance to the case and potential effect on the jury is considerably less than that in *Arizona v. Washington* where defense counsel told the jury that the State's highly improper actions in suppressing evidence caused that retrial, and in *Peng* where defense counsel thrust his credibility into the case in a matter very important to the defendant's defensive theory. While the questions in the instant case sought to call Ingram's credibility into question on one rather insignificant and undeveloped aspect, they did nothing to impeach his testimony regarding appellant's actions in committing the offense. Because defense counsel did not testify or pursue his theory about Ingram's black eye, his credibility versus Ingram's, while presented by the question, did not become an "issue." We hold that the questions posed by defense counsel, even if improper, were of "merely tangential importance" to the case itself and did not "irreversibly inject" counsel's credibility as an issue in the trial. In addition, because the trial judge failed to consider any less drastic alternatives the decla-

ration of a mistrial was improper. Cf. *Torres*, supra.

The fact that defense counsel may have made himself a potential witness in the case by his questioning of Ingram does not call for a different result. The trial judge initially explained that a mistrial was required because the State *was going to call* defense counsel as a witness. The prosecutor corrected the judge that the State *might* call defense counsel, not that it would. The matter of credibility presented by the questioning was not important to the case and did not impeach Ingram's testimony to any great degree, if at all, on a material issue, and certainly not on any issue concerning appellant's actions in committing the offense. It was not obvious that defense counsel might be a witness prejudicial to his client. Therefore, contrary to the trial judge's conclusion, no violation of DR 5–102 was shown.

We hold that no manifest necessity was shown for the declaration of a mistrial. The trial court abused its discretion in declaring a mistrial. Appellant's right not to be twice put in jeopardy for the same offense has been violated. The judgment of the Court of Appeals is reversed, and this cause is remanded to the trial court and the information ordered dismissed.

McCORMICK, P.J., and BERCHELMANN, J., concur in result.