NUMBER 13-01-329-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI – EDINBURG 
 

JAMES ARTHUR MAYDON,                                                        Appellant,

v.
 
THE STATE OF TEXAS,                                                             Appellee.
                                                                                                                      

On appeal from the 197th District Court of Cameron County, Texas 
                                                                                                                      

O P I N I O N

Before Chief Justice Valdez and Justices Rodriguez and Amidei



                                     Opinion by Justice Amidei

          James Arthur Maydon, applicant, pled not guilty to an indictment of aggravated
sexual assault. A jury was selected and sworn and the trial commenced on February 5,
2001, but ended on February 9, 2001, the fifth day of the trial, when the trial judge sua
sponte declared a mistrial over applicant’s objection. After declaring the mistrial, the trial
judge stated that the case would be reset for trial. Prior to a retrial, applicant filed an
application for writ of habeas corpus claiming retrial would violate the prohibition against
double jeopardy. U. S. Const., art. V; Tex. Const. art. I, § 14. The habeas judge denied
relief and applicant appeals. We must review the trial judge’s exercise of discretion in
declaring a mistrial and by denying the writ.



          Prior to the presentation of testimony, an in-chambers conference was held wherein
applicant’s counsel informed the court of his intention to introduce evidence to show that
‘complaining’ witness, Irene Maydon, the child’s mother, had been diagnosed since 1995
as suffering from an acute bipolar disorder, a manic depressive mental illness, and that a
psychologist would offer expert testimony indicating that bipolar disordered people, among
other things, were known to fabricate, exaggerate, have delusions, and say or commit
irrational things or acts. In fact, at the trial, the witness, Irene Maydon, admitted the mental
illness and that on the ‘complaining’ incident date, said that she had taken her daily
medication to help her cope with the disorder. Applicant’s counsel also told the court that
the evidence would show that I.N., the child who was allegedly assaulted, shortly after her
‘complaining,’ had been examined by a psychiatrist at the Tropical Texas State and Mental
Retardation Center in Harlingen, Cameron County, Texas, and was diagnosed and treated
with medication prescribed for the same disorder. The court informed applicant’s counsel
that the court was inclined to agree with the State’s position that such evidence was not
relevant, but would allow applicant some unspecified leeway in eliciting testimony touching
those matters, to a limited extent and, provided that it be established that the ‘complaining’
witness was laboring under that mental condition on the date of the ‘complaining.’
          The trial began on Monday, February 5, 2001, after a jury was selected,
empanelled, and sworn. Applicant pled ‘not guilty’ to the indictment which was read in
open court, and the State presented testimony and rested its case in chief on Friday,
February 9, 2001. On the same day, the applicant began presenting testimony through
defense witness, Adelina Maydon, applicant’s mother, followed by a second defense
witness, Raymond Garcia, the child’s cousin.
          In the courtroom during the presentation of applicant’s case, defense witness Garcia
gave testimony regarding his personal background, his occupation, and marital status. 
He stated that Irene Maydon, the ‘complaining’ witness was his aunt, and that I.N., the
child, was his cousin. Garcia also testified that the applicant was also his cousin and while
growing up, he spent a great amount of time at applicant’s house.
          Prior to the ‘complaining ‘date, February 16, 2001, Irene Maydon and the
child/victim, I.N., had been living at applicant’s home. Further, Garcia testified that he felt
I.N. was very possessive of applicant and resented Garcia going out with the applicant
because it caused applicant to be away from I.N. and her sister. 
          In laying the background and predicate concerning Garcia’s knowledge about Irene
Maydon’s bipolar disorder and how it affected her personally, defense counsel further
questioned Garcia:
Q.: All right. And its been stated here that Irene, I.N.[‘s] . . . mom, labors
under a condition called--
 
MR. WARNER: Your Honor, I object to leading.
 
THE COURT: Sustained.
 
MR. TOSCANO: Its been stated in the record, your Honor. I don’t think--
 
THE COURT: Don’t lead your witness. Hold on. Don’t lead your witness, Mr. 
Toscano.

The Court excused the jury and admonished applicant’s counsel “not to go into other
extraneous offenses . . . .”
THE COURT: Mr. Toscano, I’m going to have to ask the jury to be excused
for a few minutes.
 
THE DEPUTY: All rise for the jury.

The jury was excused.
 
THE COURT: You may be seated. Mr. Toscano, you knew the Court’s ruling
and you need to instruct your witnesses in accordance.
 
MR. TOSCANO: I have instructed him, your Honor. I have instructed him to
tell the truth that’s what I have--
 
THE COURT: You needed to instruct him as to the Court’s rulings, Mr.
Toscano.
 
MR. TOSCANO: Specifically, your Honor?
 
THE COURT: Specifically, that we don’t go into other extraneous offenses.
We’ve talked about that -- ( the subject of extraneous offenses was
considered in the ‘in chambers conference’).
 
MR. TOSCANO: But that’s not an extraneous offense, your Honor.
 
MR. WARNER: It’s -- the State is appalled your Honor. We think this is
sanctionable.
 
MR. TOSCANO: (To Witness Garcia) Did I ask you to say just what you did?
 
THE WITNESS: No, sir.
 
MR. WARNER: Your Honor, he knows full good and well he was going to say
that. You knew that.
 
THE COURT: Let’s go into that, Mr. Toscano, I am not going to sanction you
at this time, but do not let this happen again with any of your witnesses.

The court called the jury back into the courtroom, and as the State requested, gave an
instruction to the jury to ‘totally disregard’ what this witness stated, and again admonished
applicant’s counsel to abide by the rules.
THE COURT: You may be seated. Ladies and gentlemen of the jury, you
are to totally disregard what this witness stated based upon Mr. Toscano’s
question. Thank you.
 
THE COURT: (To the jury) I have already instructed Mr. Toscano, and he
knows what the rules are. You may continue.
 
MR. TOSCANO: And I will do the best, that I can to abide by them your
Honor.
 
THE COURT: Make sure you abide by what I told you, Mr. Toscano.
 
MR. TOSCANO: Yes, ma’am.

Witness Garcia resumed his testimony and stated that he felt that I.N., the child, did not
want him around, and was very ‘possessive’ of applicant, often calling him on the cellular
phone wanting to know when the applicant was returning home. Before addressing
Garcia’s opinion about the child’s reputation as to truthfulness and veracity, the following
exchanges occurred:
Q. All right. In regard to observing I.N. at the time that you would go home
and pick up James, can you explain to the jury how she acted towards you
or James?
 
A. Every time I went over to the house, I.N. and her sister . . . would --- I
would feel a little type of tension there that they didn’t want me around for the
simple fact that every time I was over to see James, I would take I guess
time away from them to where they couldn’t spend with him. Every time we
would leave, they would be constantly calling on my cell phone or on my
pager looking for him to see when he was coming back. They were real
possessive of him.
 
Q. Let me ask you, sir: Were there any times in which they ever gave you
information as to James regarding whether he was home or not?
 
MR. WARNER: Your Honor, at this time I’m going to object to relevance.
 
THE COURT: Sustained.
 
Q. (BY MR. TOSCANO): Has he ever lied to you?
 
MR. WARNER: I object.
 
MS. RUBANE: Your Honor -
 
MR. WARNER: That’s improper. He cannot ask that, your Honor, under
Rule 608 B.

The court excused the jury, and the following discussion ensued: 
 
THE COURT: You may be seated. Mr. Toscano. I am declaring a mistrial.
This case is over.
 
MR. TOSCANO: You are declaring a mistrial?
 
THE COURT: I am declaring a mistrial.
 
MR. TOSCANO: Over our objections.
 
THE COURT: Of course. You know better. You know better.
 
MR. TOSCANO: Judge, I am trying the best way that I can.
 
THE COURT: Mr. Toscano, you know better. You cannot ask those
questions. You can ask somebody if they know somebody’s reputation in the
community for being truthful and law-abiding and you cannot --
 
MR. TOSCANO: Or to a lot of the things, your Honor.
 
THE COURT: We are over. I don’t want to hear anymore. That’s it. We will
set this case for trial again.

The trial court did not specify any grounds for the mistrial order and refused to hear
anything further from applicant’s attorney. On February 9, 2001, the following docket entry
was made: “Defendant continued with their evidence. Court was forced to declare a
mistrial due to manifest necessity,” but the record does not contain a finding of the trial
judge that the court was forced to declare a mistrial due to a manifest necessity or anything
else which could be construed as grounds for a mistrial.
          Thereafter, applicant filed a first amended special plea of double jeopardy and
motion to bar further prosecution, and an application for a writ of habeas corpus. The trial
court denied the application for writ of habeas corpus. Applicant urges one issue:
Was the trial judge’s declaration of a mistrial (over objection of defense
counsel) a manifest necessity? The declaration of a mistrial was apparently
based on defense counsel’s question to a witness attempting to bolster the
truthfulness of the defendant.

The standard for appellate review of the trial court’s exercise of discretion in declaring a
mistrial because of manifest necessity has often been quoted:
We think, that in all cases of this nature, the law has invested Courts of
justice with the authority to discharge a jury from giving any verdict
whenever, in their opinion, taking all the circumstances into consideration,
there is a manifest necessity for the act, or the ends of public justice would
otherwise be defeated. They are to exercise a sound discretion on the
subject; and it is impossible to define all the circumstances, which would
render it proper to interfere. To be sure, the power ought to be used with the
greatest caution, under urgent circumstances, and for very plain and obvious
causes; and, in capital cases especially, Courts should be extremely careful
how they interfere with any of the changes of life, in favour of the prisoner. 
But after all, they have the right to order the discharge; and the security
which the public have for the faithful, sound, and conscientious exercise of
this discretion, rests, in this, as in other cases, upon the responsibility of the
Judges, under their oaths of office. 

Harrison v. State, 788 S.W.2d 18, 22 (Tex. Crim. App. 1990)(quoting United States v.
Perez, 22 U.S. 579 (1874)).
          In Arizona v. Washington, the United States Supreme Court emphasizes that, in the
context of a declaration of mistrial involving an assessment of the prejudicial impact upon
the jury of some impropriety, the trial judge’s decision is entitled to great deference;
whereas, the strictest scrutiny is employed when some intentional misconduct by the
prosecutor is the basis for the mistrial. Arizona v. Washington, 434 U.S. 497, 514-16
(1978). According to the supreme court, this exercise of discretion means that the trial
judge must consider the defendant’s right to have his trial completed by the particular
tribunal and balance society’s interest in a fair judgment; however, just because a different
judge might have acted differently does not mean the trial judge’s declaration of a mistrial
was incorrect. Id. But the determination of whether a trial judge exercised sound
discretion also normally means that the trial judge must consider less drastic alternatives
to a mistrial. Id. The trial judge need not necessarily expressly state these considerations
regarding less drastic alternatives on the record as long as his basis for the mistrial order
is adequately shown by the record. Our court of criminal appeals has adopted the analysis
utilized by the supreme court in Arizona. See Harrison, 788 S.W.2d at 22; Torres v. State,
614 S.W.2d 436, 442 (Tex. Crim. App. 1981). 
          As a general rule, after a jury has been impaneled and sworn, thus placing the
defendant in jeopardy, double jeopardy bars a re-trial if the jury is discharged without
reaching a verdict. Ex Parte Fierro, 79 S.W.3d 54, 56 (Tex. Crim. App. 2002). An
exception to this rule exists when the defendant consents to a retrial or a mistrial is
mandated by "manifest necessity." Id. Manifest necessity is limited to very extraordinary
and striking circumstances. Id. There must be a "high degree" of necessity that the trial
come to an end. Id. Conditions requiring a mistrial "should be considered very unusal in
an adersary system." Ex Parte Peterson, 117 S.W.3d 804, 815 (Tex. Crim. App. 2003)
(merely offering objectionable and unfairly prejudicial evidence or commiting other errors
of judgment will not suffice to necessitate a mistrial). 
          Further, as a general rule, manifest necessity exists where the circumstances render
it impossible to arrive at a fair verdict, where it is impossible to continue with trial, or where
the verdict would be automatically reversed on appeal because of trial error. Brown v.
State, 907 S.W.2d 835, 839 (Tex. Crim App. 1995).
          The last question applicant’s attorney was permitted to propound prior to the mistrial
order was to Garcia, applicant’s cousin, “Has he ever lied to you?” The State’s attorney
and the trial court believed the question directly or indirectly attacked the credibility of Irene
and violated the court’s instructions prohibiting the mention of extraneous offenses. The
question, which was not answered, was intended to bolster the credibility of applicant. 
However, under the circumstances, the question sought testimony that was “merely of
tangential importance” because Garcia, as a close relative and friend of applicant’s, was
not a disinterested witness and would likely favor applicant with his testimony. Harrison,
788 S.W.2d at 23. 
          Although the objections were of the State's attorney's own doing and thereby
instigated the trial court's action in declaring a mistrial, apparently it was sudden and
unanticipated by both the State's attorney and the applicant's attorney. Objections for
"leading the witness" and "relevance" are not so unusual to require a mistrial. Although the
court sustained the "leading the witness" objection, for some unknown reason the State's
attorney complained he was "appalled" and sought "sanctions" against applicant's attorney.
The court ruled that she was not going to impose sanctions that time, but warned
applicant's attorney "to not let it happen again" without explaining what was prohibited. The
court seemed confused as to the nature of the objection because after the "leading"
objection she chastized applicant's attorney for not instructing his witnesses as to a prior
court ruling. The court instructed the jury to "totally disregard" what the witness stated
notwithstanding the witness did not say anything. The court declared a mistrial on her own
motion without stating a reason therefor.
          Despite a trial judge's discretion in declaring a mistrial based on manifest necessity,
the trial judge is required to consider and rule out “less drastic alternatives” prior to granting
a mistrial. Ex Parte Brown, 907 S.W.2d 835, 839 (Tex. Crim. App. 1995). Thus, prior to
granting a mistrial based on manifest necessity, the trial judge must review the alternative
courses of action and choose the one, which, in light of all the circumstances, best
preserves the defendant's "right to have his trial completed before a particular tribunal." 
Id. We hold that the question in dispute did not attack Irene’s credibility or violate the
court’s instructions prohibiting the mention of extraneous offenses. 
          The trial judge’s reasons for declaring a mistrial are not “plain and obvious.” 
Harrison, 788 S.W.2d at 23. Whether applicant ever lied to Raymond was a minor issue
and would not likely have had much effect on the jury. Id. The trial judge gave no
consideration to any less drastic alternatives such as an instruction to disregard, or to the
double jeopardy right of the applicant. Id. Where the issue is of minor significance to the
case, consideration of lesser alternatives is certainly most important when weighing a
defendant’s double jeopardy right along with such considerations. Id. Assuming that
Garcia would have testified that the applicant never lied to him, such testimony would have
done nothing to impeach Irene’s or I.N.’s testimony regarding applicant’s actions in
committing the offense. Id. 
          We hold that there was no manifest necessity for the declaration of a mistrial. By
the sua sponte declaration of mistrial the trial judge denied applicant’s constitutional right
to be tried by the chosen jury. Torres, 614 S.W.2d at 441 (once jeopardy attaches the
defendant possesses a valued right to have his guilt or innocence determined before the
first trier of fact). See U.S. Const. amend. V (“nor shall any person be subject for the
same offense to be twice put in jeopardy of life or limb”); Tex. Const. art. I, § 14 (“no
person, for the same offense, shall be twice put in jeopardy of life or liberty, nor shall a
person be again put upon trial for the same offense, after a verdict of not guilty in a court
of competent jurisdiction”). Applicant timely objected to the trial judge’s declaration of a
mistrial, and did not consent to a retrial notwithstanding the court’s statement that the case
would be set for trial again. The trial judge abused its discretion in declaring a mistrial in
the absence of manifest necessity, and in denying applicant’s writ of habeas corpus.
Applicant’s retrial is jeopardy barred.
          Applicant’s issue is granted.
          The trial court’s judgment is reversed, and the cause is remanded to the trial court
to enter an order discharging applicant and barring any reprosecution for the same offense.
 

                                                                                      _____________________
                                                                                      MAURICE AMIDEI,
                                                                                      Assigned Justice 

Publish. 
Tex. R. App. P. 47.2(b).
Opinion delivered and filed 
this the 12th day of August, 2004.