

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0613-13

### LEONARD PIERSON, JR., Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SIXTH DISTRICT COURT OF APPEALS
### BOWIE COUNTY

**HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., MEYERS, PRICE, KEASLER, COCHRAN, and ALCALA, JJ., joined. PRICE, J., filed a concurring opinion. WOMACK and JOHNSON, JJ., concurred.**

### O P I N I O N

Appellant, Leonard Pierson, Jr., was charged with indecency with a child and aggravated sexual assault of a child. After the victim completed her direct-examination testimony, the defense's first question on cross-examination was, "Did you also make an allegation that [Appellant] did these same things to his own daughter?" After a hearing, the trial court granted the State's request for a mistrial. Appellant then filed a pretrial

habeas-corpus application seeking to prevent a second trial on the basis of double jeopardy. The court denied that application because it again found (as it did at trial) that the mistrial was the fault of the defense and that there was no other appropriate remedy under the circumstances; thus there was a manifest necessity to retry Appellant, and his second trial was not precluded by double-jeopardy principles.

Appellant was convicted at his second trial of one count of indecency with a child and seven counts of aggravated sexual assault of a child. He was sentenced to life imprisonment. On appeal, Appellant argued that his second trial violated double-jeopardy principles, but the Texarkana Court of Appeals held that the trial court properly granted the State's request for a mistrial. *See Pierson v. State*, 398 S.W.3d 406, 420 (Tex. App.—Texarkana 2013). We granted Appellant's sole ground for review:

> The single question posed by Petitioner's trial counsel did not create the type of very extraordinary and striking circumstances necessary to sustain a finding of manifest necessity to declare a mistrial. The court of appeals either misapplied or misinterpreted precedent to reach its contrary conclusion.

We will affirm the judgment of the court of appeals.

### FACTUAL BACKGROUND

The State called the victim as its fifth witness in its case in chief. The first question the defense asked on cross-examination was, "Did you also make an allegation that [Appellant] did these same things to his own daughter?" The State objected to the question before it was answered, and the trial court excused the jury. During the hearing

outside the presence of the jury, the following exchange took place:

> [PROSECUTOR]: That's way not allowed in cross. I mean, I think that's grounds for a mistrial.

> [COURT]: Hold on, hold on a second.

> [DEFENSE COUNSEL #2]: The other daughter was questioned by the CAC[1] based on the allegation.

> [PROSECUTOR]: That's not admissible here.

> [COURT]: Okay, what's the nature of the --?

> [DEFENSE COUNSEL #2]: (Inaudible, whispering)

> [PROSECUTOR]: Under 412, no way.

> [COURT]: Hold on. We've got to have a hearing on the -- is the nature of the question that she has made a false outcry against somebody else or that she's made a true outcry against some other person?

> [PROSECUTOR]: He can't prove that it's false, but [the victim] -- in the end of her CAC interview she said that [Appellant molested] his daughter too. That's it. She didn't say what he did, how he did -- I mean, there was nothing. That was the extent of it.

> *       *       *

> [COURT]: It's not proof by a preponderance of the evidence or proof beyond a reasonable doubt; it's that it's actually false. That's the standard.

> [DEFENSE ATTORNEY #2]: I don't know how -- how would you ever prove that though?

> [COURT]: An admission. That's the only way any court's ever found it, was an admission by the victim that it was actually false.

---

[1]The acronym "CAC" is an abbreviation for Child Advocacy Center.

[PROSECUTOR]: And -- there's no way I can recover from that.

[COURT]: I don't see how you can either.

[DEFENSE ATTORNEY #2]: Well, yeah, that doesn't get into the actual --.
There's not any way an instruction would cure that?

[PROSECUTOR]: No. I mean, I'm asking for a mistrial. It's out there.
There's no way I can get it --.

[COURT]: I don't see how there's any possible way that a jury could
disregard this kind of testimony. And in the event of an appeal, the [S]tate's
got no right -- I mean in the event of an acquittal, the [S]tate's got no right
of an appeal, so they're absolutely prejudiced if the jury hears it.

After a twenty-four-minute recess, the trial court resumed the hearing and asked the

defense to "flesh out [their] argument a little bit more about the basis for the admissibility

of [the] cross examination." The defense explained that the victim stated at the end of her

CAC interview that Appellant did "the same sorts of things, same -- made the same

allegations, that he had committed those allegations against his own daughter, who's now

sixteen years old. So she made an allegation that the alleged perpetrator in her case had

done the same types of things to his own biological child." Defense counsel went on to

argue that Appellant's biological daughter denied ever being molested, and that

Appellant's biological daughter's denial would be relevant to the victim's credibility. The

following exchange then took place between the court, the prosecutor, and the defense:

[COURT]: But it's a collateral issue. I mean, you're attacking her
credibility with a statement not -- not her own allegation that he's done this
to others but her statement that he said he's done it to other people.

[DEFENSE COUNSEL #2]: No, sir, Judge, that wasn't the -- my

understanding of it was she claimed that this happened in DeKalb[, Texas] in her presence when he abused his daughter, I believe is my understanding.

[PROSECUTOR]: No, that was her cousin.

[DEFENSE COUNSEL #2]: Oh, that's the cousin?

[DEFENSE COUNSEL #1]: Yes.

[DEFENSE COUNSEL #2]: Okay.

\*     \*     \*

[COURT]: So we don't even really know what the basis for her statement was.[2]

[DEFENSE COUNSEL #1]: We don't know the basis of the statement, just that she made the allegation and that it was subsequently investigated and went nowhere.

At this point, the court stated that

I find that [issue] to be so far removed from this case to begin with, it's a collateral issue that could only interject confusion to the jury[.] [T]here's not even enough to substantiate that it's even her own statement, that she's alleging it happened, but that it's her understanding that it happened . . . .

The judge then cited and discussed a number of cases that he felt led to the conclusion that the defense's question was improper because the answer would not lead to admissible evidence. *See Lopez v. State*, 86 S.W.3d 228 (Tex. Crim. App. 2002); *Garcia v. State*, 228 S.W.3d 703 (Tex. App.—Houston [14th Dist.] 2005); *Hughes v. State*, 850 S.W.2d 260

---

[2]The victim allegedly made the allegation in question during an interview with the Sexual Assault Nurse Examiner. However, that video was not offered into evidence at trial. In addition, at Appellant's second trial, Pamela Freeman, a registered nurse, referred to a report that apparently contained the content of what was said by or to the victim, but that report was not offered into evidence. *See Pierson*, 398 S.W.3d at 414 n.5.

(Tex. App.—Forth Worth 1993); *Thompson v. State*, 669 S.W.2d 420 (Tex.

App.—Houston [1st Dist.] 1984). Returning to the case at hand, the judge concluded,

> I find that the evidence is not admissible. It is unduly prejudicial -- it's not relevant, first of all, it's unduly prejudicial. It serves only to interject issues that are collateral which would potentially confuse the jury, and I don't know how it can be cured with an instruction to the jury. So with that said, I'm going to grant the [S]tate's motion for a mistrial. Since I find that this was done because of actions of the defendant and not because of the actions of the [S]tate, then there's no jeopardy that attaches.

After the judge granted the State's motion for a mistrial, Appellant filed a pretrial

habeas-corpus application[3] to prevent his second trial from taking place because he

argued that his second trial violated the double-jeopardy prohibition of the United States

Constitution. In his application, Appellant alleged that "the mistrial was caused by the

prosecutor's objection to defense counsel's attempt to elicit whether the alleged victim

had made other allegations against [Appellant,]" and that "the mistrial in this case was

caused by the prosecutor either intentionally or recklessly."[4] *See Ex parte Bauder*, 974

---

[3]The same judge presided over Applicant's first trial, ruled on Applicant's habeas-corpus application, and presided over Applicant's second trial.

[4]The prosecutor's response, in relevant part, to Applicant's allegation was that,

[PROSECUTOR]: [I] am absolutely appalled, offended. If everybody remembers, I was sitting right there when it happened, not saying a word.

The fact that that's what they'[ve] alleged partially in this motion is absolutely . . . absurd since . . . I wasn't saying anything. And so for [defense counsel] to say that, "I swear this is true and correct," uh, wow.

S.W.2d 729 (Tex. Crim. App. 1998).[5] The defense also changed its argument with respect to the basis for the admissibility of the question asked: the defense argued that the question was proper as evidence of an extraneous offense. *See* TEX. R. EVID. 404(b). Furthermore, Appellant argued that "there was just simply a question asked, did you make this allegation. There was no inference o[f] whether it was true or not true." Appellant concluded by asserting that there was no manifest necessity to grant the State's request for mistrial because the State was not harmed by the question and that there were less drastic means to remedy the problem than granting a mistrial. The State vigorously disputed Appellant's characterization that it intentionally or recklessly caused the mistrial by objecting, and it asserted that the question precipitating the mistrial was incurable and, therefore, there was a manifest necessity to grant a mistrial.

After hearing the arguments of the parties, the court concluded that "it stretches credulity just a bit to say that the question did not imply that it was true or not true[,]" and that, out of the two possible intentions in asking that question on cross-examination, only one possibility made sense: "the only reasonable interpretation of the purpose for the question was that the answer would be yes, and then the defense would litigate the truth of that allegation, in essence interjecting that the child victim had made a false allegation

---

[5]Although Appellant argues that this Court's opinion in *Bauder* controls the double-jeopardy issue in this case, we note that *Bauder* was overruled by this Court over eight years ago. *See Ex parte Bauder*, 974 S.W.2d 729 (Tex. Crim. App. 1998), *overruled by Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007) ("[W]e overrule *Bauder* and its progeny (*Bauder III*, *Lee II*, *Peterson II*).").

of sexual abuse by the defendant against his own daughter, and since that allegation was

false, . . . she's a liar, and since she's a liar, . . . this allegation's false."[6] The judge went

on to state,

> I don't see how you can reasonably interpret this question as not
> being harmful to the [S]tate. It proposes to interject before the jury an
> allegation upon which they are to speculate that the child made a false
> accusation that [Appellant] did this to his own daughter, and that therefore,
> if that allegation is false, then this one must be false as well. And . . . it's
> not the kind of evidence interjected before the jury that the Court believes
> could be cured with an instruction to disregard. [O]n top of . . . that since
> the [S]tate has no right of appeal in the event of an acquittal, it is prejudicial
> to the [S]tate for the defense to interject something that was not admissible
> to begin with, that is highly prejudicial, and then simply ask the jury to
> disregard and wait for the jury to acquit because they can't really disregard
> it.
> All of that leads the Court to the only conclusion that I could reach,
> which was the conclusion I reached at that time, which was, this was a
> mistrial caused by the fault of the defense and that there was no remedy
> short of a mistrial, and therefore it meets the test of manifest necessity
> which does not preclude retrial under the Fifth Amendment. So the motion,
> or the application for writ of habeas corpus, is denied and we'll go forward
> with the jury selection.

Appellant was convicted at his second trial of one count of indecency with a child

and seven counts of aggravated sexual assault of a child. Relevant to this case, Appellant

appealed his convictions on double-jeopardy grounds. The Texarkana Court of Appeals

---

[6]*See* TEX. R. EVID. 404(a) (stating that generally "[e]vidence of a person's character or character trait is not admissible for the purpose of proving action in conformity therewith on a particular occasion . . . ."). The other intention that the court agreed was possible, but highly unlikely, was that defense counsel thought the victim had made a *true* allegation that Appellant had also sexually abused his biological daughter and that the defense intended to inform the jury that their client was guilty of sexually assaulting his daughter. For reasons that are obvious, the trial judge did not consider this a legitimate intention, despite Appellant's argument to the contrary.

held that the trial court did not abuse its discretion in granting the State's request for a mistrial because "[t]he trial court explicitly considered and rejected the alternative of giving an instruction to disregard, and the record provides some support for the trial court's conclusion that the intent of the question was to prejudice the jury, rather than a realistic attempt to solicit admissible evidence." *Pierson*, 398 S.W.3d at 419–20. We granted review to determine whether the court of appeals misapplied or misinterpreted existing precedent when it held that the trial court was within its discretion to find that there was a manifest necessity to grant a mistrial.[7]

## DISCUSSION

Generally a criminal defendant may not be put in jeopardy by the State twice for the same offense. U.S. CONST. amend. V; *see Hill v. State*, 90 S.W.3d 308, 313 (Tex. Crim. App. 2012). The prohibition on double jeopardy was extended to the states by the United States Supreme Court through the Fourteenth Amendment. *See Benton v. Maryland*, 395 U.S. 784 (1969), *overruling*, *Palko v. Conneticut*, 302 U.S. 319 (1937). In cases tried before a jury, a defendant is placed in jeopardy when the jury is empaneled and sworn, and "because jeopardy attaches before the judgment becomes final, the constitutional protection also embraces the defendant's 'valued right to have his trial

---

[7]The precise ground for review is:

The single question posed by Appellant's trial counsel did not create the type of very extraordinary and striking circumstances necessary to sustain a finding of manifest necessity to declare a mistrial. The court of appeals either misapplied or misinterpreted existing precedent to reach its contrary conclusion.

completed by a particular tribunal.'" *Arizona v. Washington*, 434 U.S. 497, 504 (1978)

(quoting *Wade v. Hunter*, 336 U.S. 684, 689 (1949)); *see Hill*, 90 S.W.3d at 314. Despite

the general prohibition against jeopardy-barred trials, there are two exceptions when a

criminal defendant may be tried a second time without violating double-jeopardy

principles if the prosecution ends prematurely as the result of a mistrial: (1) if the criminal

defendant consents to retrial or (2) there was a manifest necessity to grant a mistrial. *Ex*

*parte Garza*, 337 S.W.3d 903, 909 (Tex. Crim. App. 2011); *see Washington*, 434 U.S. at

505–06. These exceptions are recognized because valid reasons exist for a jury to be

discharged before the conclusion of a trial and not all of those reasons "invariably create

unfairness to the accused[.]" Thus, a defendant's right to have his trial conducted by a

particular tribunal "is sometimes subordinate to the public interest in affording the

prosecutor one full and fair opportunity to present his evidence to an impartial jury."

*Washington*, 434 U.S. at 505.

To prevail in a double-jeopardy claim, a criminal defendant must first show that he

or she is being tried for the same offense for which the mistrial was declared over the

defendant's objection. The burden then shifts to the State to demonstrate a "manifest

necessity" (also referred to as a "high degree" of necessity) for the mistrial. A trial court's

decision to declare a mistrial is limited to the inquiry of if there was a "manifest

necessity" to grant a mistrial. *See Garza*, 337 S.W.3d at 909. We have stated that a trial

court abuses its discretion if it declares a mistrial "without first considering the

availability of less drastic alternatives and reasonably ruling them out[,]" although the basis for the mistrial need not be expressly articulated in the record. *Id.* And the Supreme Court has stated that "the overriding interest in the evenhanded administration of justice requires that we accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment." *Washington*, 434 U.S. at 511. As an appellate court, it is our function to review the record and determine if the trial judge exercised "sound discretion" when granting a mistrial. *Id.* at 514.

**ANALYSIS**

**A. Appellant did not consent to the State's request for a mistrial.**

The court of appeals stated in its opinion that "[t]he State concedes that [Appellant] opposed the State's request for a mistrial, and the record supports that position." *Pierson*, 398 S.W.3d at 412 n.4. The State has not challenged the conclusion of the court of appeals in its petition for discretionary review or in its brief on the merits, and after reviewing the record, we agree with the court of appeals that Appellant did not consent to the granting of a mistrial at his first trial.

**B. The court of appeals correctly concluded that the trial court did not abuse its discretion when it excluded the question at issue on cross-examination.**

With respect to the trial judge's decision to exclude the propounded question as improper, the court of appeals relied on this Court's opinion in *Vinson v. State*, 252 S.W.3d 336, 340 (Tex. Crim. App. 2008), to conclude that Appellant failed to carry his

burden under Rule 104(a) of the Texas Rules of Evidence to prove the admissibility of the evidence he sought to introduce and, therefore, that the cross-examination question was proper. We agree with the conclusion of the court of appeals.

In *Vinson*, we stated that "[i]n our criminal justice system, the proponent of evidence ordinarily has the burden of establishing the admissibility of the proffered evidence." *Vinson*, 252 S.W.3d at 340; *see* TEX. R. EVID. 104(a) ("Preliminary questions concerning . . . the admissibility of evidence shall be determined by the court . . . ."). Our statement from *Vinson* remains valid law in Texas, and we hold that it controls the evidentiary issue in this case. As the court of appeals noted in its opinion,

> The record in this case is not sufficiently developed for us to determine whether evidence of the false allegation at issue was admissible. Although the defense announced an intent to call [Appellant]'s biological daughter to testify to the falsity of the allegation, **the record is unclear concerning what the prior false allegation was**. The attorneys disagreed concerning whether [the victim] claimed to have personally observed some abuse or to have heard a report of abuse. As summarized by the trial court, "So we don't even really know what the basis for her statement was."[8]

*Pierson*, 398 S.W.3d at 416–17 (emphasis added). In short, the parties and the court were not sure what the content of the victim's allegation actually was, only that an allegation of some kind was made.[9] However, without knowing the content of the victim's allegation,

---

[8]In response to the judge's comment, one counsel for Appellant stated, "We don't know the basis of the statement, just that she made the allegation and that it was subsequently investigated and went nowhere."

[9]Different theories of what the victim had alleged were discussed at different points during this process, including that the victim alleged that Appellant had also sexually abused his biological daughter (prosecutor), Appellant told the victim that he had also sexually abused his

it appears that defense counsel hoped, more than intended, that the answer elicited would lead to admissible evidence.

Despite not knowing exactly what the victim had alleged, the record indicates that Appellant's theory of admissibility at trial was that the question asked was intended to impeach the victim's veracity because Appellant would call his biological daughter to the stand to deny the victim's allegation. In addition, at a hearing on Appellant's pretrial application for a writ of habeas corpus, Appellant argued for the first time that "trial counsel . . . made the trial court aware of the possibility that the bad relationship between [Appellant] and [the victim]'s mother was a motive for the mother to coach [the victim] to make false accusations." Because this new theory of admissibility was presented only at the pretrial conference at the second trial, and the trial court had no opportunity to consider it at the first trial, we will not consider it. *See* TEX. R. APP. P. 33.1. We note, however, Appellant's continuation of the argument attempting to prove that the victim was a liar.[10] However, the habeas judge addressed Appellant's argument before denying

biological daughter (trial judge), or the victim stated that she thought that Appellant had also sexually abused his biological daughter (prosecutor).

[10]The following exchange occurred in response to defense counsel's question to Kathy Lach, a Sexual Assault Nurse Examiner, that testified at Appellant's second trial: "And there's been trials you've testified in that the jury has found the child was not telling the truth, hasn't there?":

> [COURT]: You've now interjected before the jury that there have been other cases where she's testified that the jury has found that the child was lying.

*     *     *

his pretrial application for a writ of habeas corpus and skeptically concluded,

> [COURT]: Okay. Well, I think it is -- I think it stretches credulity just a bit to say that the question did not imply that it was true or not true. If the Court were to find that the answer to the question was 'yes, and those allegations are true,' then essentially defendant would have interjected an extraneous offense against his own client. That's the only conclusion you could reach. So the only reasonable interpretation of the purpose for the question was that the answer would be yes, and then the defense would litigate the truth of that allegation, in essence interjecting that the child victim had made a false allegation of sexual abuse by the defendant against his own daughter, and since that allegation was false, therefore she's a liar, and since she's a liar, therefore, this allegation's false.

In *Flannery v. State*, 676 S.W.2d 369, 370 (Tex. Crim. App. 1984) (per curiam), this

---

> [DEFENSE COUNSEL #1]: But Judge, it's cross examination. We're entitled to get into her opinions and findings.
>
> [PROSECUTOR]: Objection based on relevance, speculation. It's horribly prejudicial.
>
> [DEFENSE COUNSEL #1]: What about, what she's testifying to has nothing to do with this case.
>
> [COURT]: [Defense counsel], it really does. It's rebuttal to your theory that the child must be lying because she didn't have injuries. And she's testifying as to what her experience, her training, her background has demonstrated, that that's not always the case. That doesn't discuss any specific case, it doesn't talk about this case. It's just simply rebutting the theory that you've proposed that the child must be lying because she doesn't have trauma.
>
> *       *       *
>
> [COURT]: So you have opened that door. All they're doing is rebutting your theory. Your theory is, there's always trauma.
>
> [DEFENSE COUNSEL #1]: No, my theory in this case did they find any trauma.
>
> [COURT]: No, that's the -- the theory you have proposed to this jury is, there's always trauma. Since there is no trauma --.

Court explained the general rule that impeachment on a collateral matter is impermissible. *Id.* Although exceptions to the general rule exist, and sometimes the rules of evidence must give way to a defendant's Sixth Amendment right to confront his or her accuser,[11] Appellant has not shown that any such exception applies in this case. Rather, Appellant made an inadequate showing that the complaining witness herself made the allegation that Appellant sexually abused his biological daughter and that the allegation was false. Under these circumstances, the trial court was free to conclude that Appellant failed to carry his burden, as proponent of the evidence, to show that the question was anything more than a prelude to impeachment on a collateral matter and an impermissible attempt to attack the complaining witness's general credibility with evidence of specific instances of conduct. *See* TEX. R. EVID. 608(b). Based on our review of the opinion of the court of appeals and the record in this case, we hold that the court of appeals correctly concluded that the trial court did not abuse its discretion when it excluded Appellant's cross-examination question as impermissible. Appellant failed to carry his burden, as the proponent of the evidence, that the victim's answer was admissible. *Vinson*, 252 S.W.3d at 340; *see* TEX. R. EVID. 104(a).

### C. The court of appeals appropriately gave "great deference" to the ruling of the trial court.

---

[11]*See, e.g.*, *Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009) (discussing the relationship between the Texas Rules of Evidence and a defendant's Sixth Amendment right to confront the witnesses against him or her, including a qualified right to attack the accusers "general credibility or to show . . . possible bias, self-interest, or motives in testifying").

The court of appeals held that it was required "to grant the trial court's evaluation of potential juror bias 'great deference.'" *See Pierson*, 398 S.W.3d at 419 (citing *Ross v. Petro*, 515 F.3d 653, 661 (6th Cir. 2008)).

Appellant argues that the court of appeals mistakenly gave "great deference" to the trial court's ruling granting the mistrial. He appears to assert that this standard does not apply when assessing the correctness of granting a mistrial based on a question asked, but not answered, during cross-examination. However, Appellant does not explain why a trial court's ruling should not be accorded great deference when it is based on evaluating potential juror bias, nor does he suggest what level of deference would have been appropriate according to him. Instead, Appellant opines, "[h]ad the court of appeals not given 'great deference' to the trial court's decision to grant a mistrial, the court of appeals would have likely found that the trial court did in fact abuse its discretion."

The seminal case on this issue is *Arizona v. Washington*, 434 U.S. 497 (1978). In *Washington*, the respondent was found guilty of murdering a hotel clerk. *Id.* at 498. Later, he was granted a new trial when it was discovered that the State had withheld exculpatory evidence. *Id.* During the voir dire at the respondent's second trial, the State alluded to testimony of a witness from a previous trial. Then, during defense counsel's voir dire, he stated "that there was evidence hidden from [respondent] at the last trial." *Id.* at 499. Later in the defense's opening arguments, counsel explained in greater detail that the jury would hear about how the State had withheld exculpatory evidence, and that the Arizona

Supreme Court ordered that the respondent should receive a new trial in light of the State's *Brady* violation. *Id.* After opening arguments, the State requested a mistrial based on defense counsel's comments, which the court denied. *Id.* at 499–00. The following morning, the State renewed its request for a mistrial based on additional research that it argued showed that "there was no theory on which the basis for the new trial ruling could be brought to the attention of the jury, that the prejudice to the jury could not be repaired by any cautionary instructions, and that a mistrial was a 'manifest necessity.'" *Id.* at 500. This time the trial court granted the State's motion. *Id.* at 501.

Our precedent and a review of *Washington* do not support Appellant's alleged distinction between opening arguments and questioning on cross-examination. *See Harrison v. State*, 788 S.W.2d 18, 22 (Tex. Crim. App. 1990) ("[*Washington*] emphasizes that in the context of a declaration of mistrial involving an assessment of the prejudicial impact upon the jury of some impropriety, the trial judge's decision is entitled to great deference . . . ."). Instead, in *Washington*, the Supreme Court's discussion of when great deference should be accorded to the ruling of a court granting a mistrial turned on the trial judge's unique ability to evaluate whether the complained of action biased the jury and, if so, to determine if that bias can be remedied by an instruction to disregard. *See Washington*, 434 U.S. at 512–13. For example, the Supreme Court stated that an improper opening statement creates a risk that "the entire [jury] panel may be tainted[,]" and that an instruction to disregard "will not necessarily remove the risk of bias that may be created

by improper argument." *Id.* Again referring to potential bias, the Supreme Court stated

that

> **There are compelling institutional considerations militating in favor of appellate deference to the trial judge's evaluation of the significance of possible juror bias.** He has seen and heard the jurors during their *voir dire* examination. He is the judge most familiar with the evidence and the background of the case on trial. He has listened to the tone of the argument as it was delivered and has observed the apparent reaction of the jurors. In short, he is far more "conversant with the factors relevant to the determination" than any reviewing court can possibly be.

*Id.* (footnote omitted) (emphasis added). Finally, the Supreme Court also contrasted the

situation it was presented with in *Washington*—opening arguments during which an entire

jury could be biased—with a situation in which only one juror on a jury is biased and

could be replaced with an alternate juror instead of granting a mistrial. *See id.* at 512 n.31

("[I]f there is a suggestion of individual juror bias, it may be possible to replace that juror

with an alternate."). Thus, it does not appear that the Supreme Court considered when the

improper comments came to be as important as when a trial judge uses his or her unique

ability to evaluate any potential bias created by an improper comment. *See Harrison*, 788

S.W.2d at 22. As a result, the reasoning explicated by the Supreme Court in *Washington*

with respect to bias created by improper argument carries the same force on cross-

examination because the potential for biasing the jury remains, and the trial judge is still

in the best position to gauge whether the jury has been biased because the judge listened

to the tone of the question as it was delivered and observed the apparent reaction of

jurors. *See Washington*, 434 U.S. at 512–13. We hold that when a trial judge's decision to

grant a mistrial is based on the risk of juror bias, that ruling is entitled to "great deference," regardless of whether the complained of conduct took place during opening arguments or took the form of a question on cross-examination.

**D. The court of appeals did not err in holding that the trial court acted with sound discretion when it determined that an instruction to disregard would be insufficient.**

Appellant argues that the court of appeals and trial court incorrectly concluded that an instruction to disregard defense counsel's question would not have cured the error, if any. Appellant goes on to assert that, "[j]ust as the court of appeals dodged the issue of the trial court's erroneous evidentiary ruling, the court of appeals dodged this issue by creating a tenuous factual distinction instead of reaching the proper conclusion." Appellant supports his argument by citing Justice Moseley's dissenting opinion from the court of appeals that argues that "a jury instruction should have sufficiently saved the trial, rendering a mistrial unnecessary." *Pierson*, 398 S.W.3d at 426 (Moseley, J., dissenting) (citing *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003); *Westbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000); *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000) (per curiam)).

With respect to the argument of what deference applies to the judge's "manifest necessity" ruling, the court of appeals properly held such a ruling should be accorded great deference when the trial court exercised "sound discretion." *Pierson*, 398 S.W.3d at 418 (citing *Renico v. Lett*, 559 U.S. 766 (2010)). This deference also applies to a trial judge's determination that an instruction to disregard would be insufficient to remediate

any juror bias because, just as a trial court is in the best position to hear the tenor of the question asked and to see the apparent reactions of jurors and determine if they have been biased, the trial judge is also in the best position to determine whether an instruction to disregard would be sufficient to remedy any bias for the same reasons.

At the hearing following Appellant's question on cross-examination, the following relevant exchange took place with respect to an instruction to disregard,

> [DEFENSE ATTORNEY #2]: Well, yeah, that doesn't get into the actual --.
> There's not any way an instruction would cure that?
>
> [PROSECUTOR]: No. I mean, I'm asking for a mistrial. It's out there.
> There's no way I can get it --.
>
> [COURT]: I don't see how there's any possible way that a jury could
> disregard this kind of testimony. And in the event of an appeal, the [S]tate's
> got no right -- I mean in the event of an acquittal, the [S]tate's got no right
> of an appeal, so they're absolutely prejudiced if the jury hears it.

Later, when the trial judge made his ruling granting the State's request for a mistrial, he stated again, "I don't know how [the bias] can be cured with an instruction to the jury."

Based on these comments, we agree with the court of appeals that "[t]he trial court's actions demonstrate deliberate consideration, rather than a precipitous ruling[,]" and that the trial court considered and ruled out "less drastic alternatives" than a mistrial, including if an instruction to disregard would have been sufficient under the circumstances. *Pierson*, 398 S.W.3d at 418–19. Furthermore, we are mindful of the Supreme Court's statement in *Washington* that

> [u]nless unscrupulous defense counsel are to be allowed an unfair

advantage, the trial judge must have the power to declare a mistrial in appropriate cases. The interest in orderly, impartial procedure would be impaired if he were deterred from exercising that power by a concern that any time a reviewing court disagreed with his assessment of the trial situation a retrial would automatically be barred.

*Washington*, 434 U.S. at 513 (quoting *United States v. Dinitz*, 424 U.S. 600, 612 (1976)).[12] Although a reviewing court may be required to accord great deference to the ruling of a trial court granting a mistrial, that trial court's ruling is not insulated from appellate review. However, on this record, we cannot say that the trial judge acted irrationally or irresponsibly when he determined that an instruction to disregard would not remediate any bias.[13] We hold that the court of appeals did not err when it concluded that the trial court exercised sound discretion in determining that an instruction to disregard was not a viable alternative to the granting of a mistrial.[14]

## CONCLUSION

The court of appeals correctly concluded that the trial court was within its discretion to declare a mistrial based on manifest necessity due to the actions of defense counsel. Therefore, Appellant's second trial was not barred by double jeopardy. We

---

[12]This is not to say that counsel in this case was unscrupulous or that he sought an unfair advantage.

[13]*See Washington*, 434 U.S. at 515.

[14]*See also Pierson*, 398 S.W.3d at 418 ("We conclude that the trial court exercised sound discretion in (a) granting the parties an opportunity to argue their positions on declaration of a mistrial, (b) considering alternatives to a mistrial, and (c) using its discretion to conclude the defense lacked a legitimate basis for the question.").

affirm the judgment of the court of appeals.

Hervey, J.

Delivered: April 9, 2014.

Publish